MERCHANTS AND SHIPPERS INSURANCE COMPANY, Respondent, *v.* ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Appellant.

First Department, March 4, 1927.

Insurance — marine insurance — action on reinsurance policy — original policy issued by plaintiff on lily of valley pips to be shipped from Germany contained particular average clause imposing liability in case shipment was more than twenty-one days on way — application for reinsurance described cargo merely as " merchandise " and did not mention prolongation clause or that vessel had sailed — plaintiff was bound to use utmost good faith — reinsurance policy subject to F. P. A. Institute clause — description of cargo as " merchandise " was not sufficient — material misrepresentations prevent recovery on reinsurance policy — estoppel — defendant not estopped by agreement to settle claim of shipper in absence of disclosure by plaintiff of all facts — acceptance of offer of settlement was made on belief that there had been fire and stranding — debatable whether heating of coal bunkers and grounding on mud flats opened particular average clause — estoppel not shown.

This is an action on a reinsurance policy to recover for loss caused by deterioration of lily of the valley pips shipped from Germany. The deterioration was caused by the length of time of shipment which was more than thirty days. The policy issued by the plaintiff contained a particular average clause making the insurer liable for partial loss only in case of stranding, sinking, burning, fire or collision, or in case the voyage was prolonged more than twenty-one days from the time of sailing. The application for reinsurance, which was made nineteen days after the shipment started, described the cargo as " merchandise " merely and omitted to mention the prolongation clause in the policy issued by the plaintiff or the fact that the vessel had already sailed. The reinsurance policy was subject to the F. P. A. Institute clause, which provides that the reinsurer is not liable for particular average unless the steamer strands, burns or sinks. The plaintiff was bound to use the utmost good faith toward the defendant in making the application and his failure to specify the exact nature of the

cargo — the word " merchandise " not being sufficient to show the exact cargo insured — the existence of the prolongation clause, and the fact that the vessel had sailed nearly three weeks before the application was made, prevents the plaintiff from recovering on the policy of reinsurance, for the plaintiff's failure to disclose these facts amounted to material misrepresentations.

The plaintiff cannot recover on the ground of estoppel in that the defendant consented to a settlement of the claim of the shipper which was based primarily on the violation of the prolongation clause. At the time of the alleged consent the defendant had been informed that the captain's protest showed both that the ship had been on fire and had stranded and of the actual nature of the cargo. But the defendant did not learn until thereafter of the exact facts relating to the so-called stranding and fire which were that the alleged fire was merely an overheating of the coal in the bunkers requiring the removal of a part thereof, and that the alleged stranding was merely grounding on mud flats in a tidal river at ebb tide, the boat floating at flood tide.

Since it is debatable whether or not the alleged fire was such as would have opened the particular average clause on that ground and made the defendant liable irrespective of the cause of loss, or whether the alleged stranding was such as would have opened the particular average clause on that ground, it was incumbent upon the plaintiff to show that the defendant was fully informed of the exact facts in reference to the alleged fire and stranding. And it was also incumbent upon the plaintiff to inform the defendant of the prolongation clause, for it was that clause that prompted the plaintiff to settle and which made it liable wholly irrespective of any marine casualty. Since the plaintiff did not show that it had informed the defendant of all the facts stated, the defendant is not estopped by its consent to the settlement.

APPEAL by the defendant, St. Paul Fire and Marine Insurance Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 1st day of April, 1926, upon a verdict rendered by direction of the court pursuant to a stipulation that the case be tried before the court without a jury and that the verdict be directed with the same force and effect as though a jury were present, and also from an order entered in said clerk's office on the 30th day of March, 1926, denying defendant's motion for a new trial made upon the minutes.

*J. M. Richardson Lyeth* of counsel [*Rush Taggart* with him on the brief; *Carter, Ledyard & Milburn,* attorneys], for the appellant.

*William F. Unger* of counsel [*Gilman & Unger,* attorneys], for the respondent.

PROSKAUER, J. On December 31, 1919, plaintiff entered into a contract of marine insurance with Loechner & Co., by which it insured a shipment of lily of the valley pips on board the steamship *Keresan,* which sailed from Hamburg on December 13, 1919. The contract was subject to particular average making the insurer liable for partial loss only in case of stranding, sinking, burning,

**638** MERCHANTS & SHIPPERS INS. CO. *v.* ST. PAUL F. & M. INS. CO.

First Department, March, 1927. [Vol. 219

fire or collision, or in case the voyage was prolonged more than twenty-one days from the time of sailing. On January 2, 1920, the plaintiff applied to the defendant for partial reinsurance of the risk. The application described the cargo merely as merchandise. It omitted to mention the existence of the prolongation clause or the circumstance that the vessel had already sailed. It was subject to the so-called F. P. A. Institute clause, which, so far as here material, provides that the reinsurer is not liable for particular average unless the steamer strands, burns or sinks. Both parties contracted in the light of the settled law that where the insurer becomes liable for particular average he must respond for damage to the cargo whether caused by the catastrophe which " opened " the particular average clause or not. While the *Keresan* was still at Hamburg on December 11, 1919, the coal in her bunkers became so heated that the captain was compelled to discharge half her bunkers and summon the fire department to be ready in case of an emergency. There was no burning. On the day the vessel left Hamburg, she was compelled by fog to anchor in the Elbe river; at ten o'clock P. M. on the ebb tide she grounded in the mud; the next morning she floated with the flood tide and got under way in the early forenoon. She proceeded to England, coaled and sailed for New York on December 20, 1919. Because of rough weather and shortage of coal she put into Halifax on January 12, 1920, and finally arrived at New York about January 17, 1920. During the voyage the lily of the valley pips sprouted and were materially damaged. In the experience of marine insurers this is a normal incident to the shipment of lily of the valley pips when the voyage lasts over thirty days. On February 14, 1920, the plaintiff notified the defendant that it had received a copy of the captain's protest covering the voyage and had noted " that in addition to a fire on board, this vessel stranded." The protest actually stated only the facts above mentioned. On September 9, 1920, Loechner & Co. filed a libel in the Federal court, based primarily upon the prolongation clause, but incidentally mentioning the stranding. Prior to May 7, 1923, the defendant learned that the cargo consisted of lily of the valley pips. On May 7, 1923, the plaintiff notified the defendant that it had been advised by its counsel to settle the litigation with Loechner & Co. for $20,000, and requested defendant's assent to the settlement. This assent was given. The plaintiff then demanded of the defendant its contribution to this settlement in accordance with the policy of reinsurance. Shortly after the receipt of this demand the defendant for the first time learned of the existence of the prolongation clause, of the actual character of the so-called stranding and fire, and of

the claimed inexactness of the plaintiff's statement of the contents of the captain's protest. On these grounds it refused to pay the contribution. This action, brought to recover that sum, was tried without a jury upon a stipulation that a verdict might be directed as though a jury were present. The verdict was directed for the plaintiff pursuant to this stipulation.

There are three causes of action. The first is based upon the contract of reinsurance alone; the second upon the contract of reinsurance as strengthened by the alleged estoppel resulting from the acquiescence in the settlement; and the third upon the acquiescence in the settlement treated as a new contract.

On the first cause of action standing alone the plaintiff is not entitled to succeed. The relationship between insurer and insured on marine insurance is one which calls for *uberrima fides*. The applicant is required to disclose to the underwriter all known facts material to the risk. (1 Arnould Marine Ins. [11th ed.] § 575; *Sun Mutual Ins. Co.* v. *Ocean Ins. Co.*, 107 U. S. 485; *M'Lanahan* v. *Universal Ins. Co.*, 1 Pet. 170, 184; *Ely* v. *Hallett*, 2 Caines, 57.) The English codification of the law of marine insurance (British Marine Insurance Act of 1906, 6 Edw. VII, chap. 41; 2 Arnould Marine Ins. 1672) expressly provides that a contract of marine insurance is based upon the utmost good faith (§ 17); that the assured must disclose every material circumstance which is known to the assured, and the assured is deemed to know every circumstance which in the ordinary course of business ought to be known by him, and if the assured fails to make such disclosure the insurer may avoid the contract (§ 18); and that every circumstance is material which would influence the judgment of a prudent insurer in fixing the premium, or determining whether he will take the risk (§ 18). While these sections of this statute have *ipso facto* no binding force, they are a fair codification of the case law and custom. The plaintiff here concealed two material facts which it knew or should have known — the nature of the cargo, with the incidental existence of the prolongation clause, and the date of the sailing of the vessel. It was a matter of common knowledge among underwriters that lily of the valley pips constituted a specially hazardous risk. If a particular average warranty were opened, an underwriter became liable for the damage to these pips irrespective of the cause of the damage. The perishable nature of the cargo was strongly brought home to the plaintiff by the insertion of the prolongation clause, which made it liable at all events for mere delay. The omission to disclose the existence of this prolongation clause standing alone might not have constituted a material concealment, because, if the F. P. A. Institute warranty were opened,

640    MERCHANTS & SHIPPERS INS. CO. *v.* ST. PAUL F. & M. INS. CO.

First Department, March, 1927.    [Vol. 219

the defendant would have been liable for damage caused by delay irrespective of the prolongation clause. As stated by one of the expert witnesses: " I would feel that if lily of the valley pips were included in the merchandise covered, it should be disclosed. As this insurance is apparently F. P. A. only, it might not be necessary to show that the original insurance covered prolongation." The testimony of the experts as to trade usage, however, is clear that the word " merchandise " was an inapt phrase to describe perishable cargo. In the language of one of them: " It would not be a right description of a consignment of lily of the valley pips."

The respondent cites Arnould on Marine Insurance (§ 223) for the proposition that except under the law of France the general law is that the word " merchandise " in a policy covers perishable articles and contraband of war. The question here, however, is not whether the word " merchandise " in the policy covers perishable articles, but whether the nature of the merchandise should have been disclosed to the underwriter. This distinction is made in the very section cited, where the author writes: " As to contraband of war, although the underwriter might avoid the insurance, unless he was told of the nature of the intended risk, yet it has never been decided that the contraband character of the cargo must be specified in the policy." The risk under a form of policy which made the underwriter liable for deterioration, irrespective of cause, if the particular average warranty were opened, was greater if the article insured was essentially perishable.

The nature of the cargo was thus a material circumstance, to the disclosure of which the defendant was entitled in determining whether it would accept the proffered business. The effect of this concealment was accentuated by a concealment of the fact that the ship was already nineteen days at sea. The representative of the brokers for Loechner & Co., who placed the initial insurance with the plaintiff, testified that he had ascertained the date of sailing from the trade journal known as the *Maritime Register* and informed the plaintiff's representative, Lown, of that date. Lown's testimony was taken by deposition. In his testimony as originally given, he stated that the broker's representative had not told him the date of sailing, but that he had searched for it in the *Maritime Register* and had not found it there. When he came to sign his deposition he materially altered over fifteen answers and deleted therefrom a somewhat circumstantial account of his search through the files of the *Maritime Register* and substituted for this the blunt statement that he did not look at the *Maritime Register* at all, but relied on the good faith of the brokers to tell him that the ship had already sailed, if in fact she had. The testimony of the defend-

ant's witness that the *Maritime Register* did contain the date of the sailing is uncontradicted, and the conclusion is unavoidable that Lown gave false testimony upon his original examination and then endeavored to support it by equally false testimony when he became aware of the danger of confrontation with the files of the *Maritime Register*. He admits that the trade usage was "that if the assured or the broker knows the vessel has been delayed beyond a reasonable time, they will so tell the underwriting company or the underwriter," but claims that he "relied on the good faith" of the brokers. He also attempts to justify his conduct by the claim that the plaintiff was already bound by a general commitment to take this insurance and that "consequently the sailing date would have been immaterial, as we were in honor bound to accept the closing." But in fact the plaintiff accepted an amount of insurance far in excess of that to which it had been committed, and this attempted explanation is, therefore, unavailing.

For these reasons the plaintiff cannot recover unless an estoppel was worked or a new contract arose because of defendant's acquiescence in the settlement made by the plaintiff with Loechner & Co.

In assenting to this settlement the defendant was justified in relying on the good faith of the plaintiff in its assertions that the captain's protest showed both that the ship had been afire and had stranded. Using language in its conventional sense, the ship had never been on fire. There had been imminent danger of fire from the overheating of the bunkers, and there is authority for the contention that in a direct suit by the assured, Loechner & Co., this overheating of the bunkers, necessitating their discharge, might be treated as coming within a clause insuring against "perils of the sea, fire," etc. (*The Knight of St. Michael,* L. R. [1898] Probate, 30.) It remains none the less true, however, that an unequivocal statement that the protest showed that the ship was on fire did not fairly apprise the defendant of the controversial nature of the claim. The casualty which opened the F. P. A. warranty was not fire. The warranty was that the insurance was free from particular average, unless the vessel be "burnt." There was room for serious dispute as to whether this overheating, which might constitute a peril of fire, fairly came under a requirement to open the warranty that the ship be "burnt."

A similar situation existed with respect to the unequivocal statement that the captain's protest claimed that the ship had stranded. This protest was substantially in the form of a ship's log. It actually stated that the ship came to anchor at ten P. M.

on December thirteenth, the tide started to ebb, the ship swung half around and the stern took bottom, about an hour later one tank was pumped out and the engines worked, but the vessel remained stranded, and the next morning at seven-twenty-five the vessel floated. Whether this constituted a technical stranding was, to say the least, open to the most serious question. (2 Arnould Marine Ins. [11th ed.] §§ 888, 889; 1 Parsons Marine Ins. 633; *Snare & Triest Co.* v. *Fireman's Fund Ins. Co.*, 261 Fed. 777; *Potter* v. *Suffolk Ins. Co.*, 2 Sumn. 197; *Kingsford* v. *Marshall*, 8 Bing. 458; *Hearne* v. *Edmunds*, 1 Brod. & Bing. 388.) Some authorities lay down the rule that " if a ship ' touches and goes ' she is not stranded; * * * but if she ' touches and sticks ' she is." (*London Assurance* v. *Companhia de Moagens*, 167 U. S. 149, 158.) But it none the less remains a controversial question whether a mere touching in a tidal river at ebb tide followed by a going without mishap upon the flood tide would be treated as a stranding.

In view of the debatable nature of the claims of burning and stranding, the validity of which was a prerequisite to this plaintiff's liability, good faith required that the defendant be apprised, not only of the facts, well known to plaintiff, upon which these claims were based, but also that the plaintiff had a conflicting interest and was prompted to settle by the existence of the prolongation clause, which made it liable wholly irrespective of any marine casualty whatever. The defendant, on the information given it by the plaintiff, up to the time that it was requested to approve the settlement, was led to believe that there was a clear stranding and burning, at least in the opinion of the plaintiff. If it had known the facts of the alleged stranding and burning and the existence of the prolongation clause which actuated the plaintiff to settle, irrespective of marine casualty, it is not conceivable that it would have instantly acquiesced in this settlement on the mere request of the plaintiff. The estoppel which would otherwise be worked by this assent is vitiated by this concealment of these three sets of facts, which, taken together, cumulatively constitute material misrepresentation.

The judgment and order appealed from should be reversed on the law and the facts, with costs, and judgment directed for the defendant, with costs.

Dowling, P. J., Merrell, Finch and McAvoy, JJ., concur.

Judgment and order reversed, with costs, and judgment directed in favor of defendant, with costs.