BERNARD H. STECKER, Doing Business as B. H. STECKER Co., Appellant, *v.* AMERICAN HOME FIRE ASSURANCE Co., Respondent.

Argued January 6, 1949; decided March 3, 1949.

*Abraham Streifer, Benjamin L. Tell* and *Solomon M. Cheser* for appellant. I. Under the ordinary rule, which is here applicable, the defense must fail. (*Merchants & Shippers Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 219 App. Div. 636, 246 N. Y. 616; *Browning* v. *Home Ins. Co.*, 71 N. Y. 508; *Sebring* v. *Fidelity-Phenix Fire Ins. Co.*, 255 N. Y. 382; *Davis Yarn Co.* v. *Brooklyn Yarn Dye Co.*, 293 N. Y. 236; *Blair* v. *National Security Ins. Co.*, 126 F. 2d 955; *Sun Ins. Office, Ltd.*, v. *Mallick*, 160 Md. 71; *Northwestern Nat. Ins. Co.* v. *Mortensen*, 230 Wis. 377; *Soelberg* v. *Western Assur. Co.*, 119 F. 23; *New England Mut. Marine Ins. Co.* v. *Dunham*, 11 Wall. [U. S.] 1; *City of Detroit* v. *Grummond*, 121 F. 963; *Hansen* v. *Continental Ins. Co.*, 262 N. Y. 136; *Penn Mut. Life Ins. Co.* v. *Mechanics' Sav. Bank & Trust Co.*, 72 F. 413.) II. The facts were known to the insurer prior to the loss.

*Joseph Bleich* and *Henry H. Abrams* for General Brokers Association of Metropolitan District, Inc., and others, *amici curiæ*, in support of appellant's position. I. No historical or factual basis exists to extend the marine rule of disclosure to inland marine insurance. II. The extension of the marine rule to other branches of insurance is contrary to common law and judicial precedent. (*Hartford Protection Ins. Co.* v. *Harmer*, 2 Ohio St. 452; *Gates* v. *Madison County Mut. Ins. Co.*, 5 N. Y. 469; *Rawls* v. *American Mut. Life Ins. Co.*, 27 N. Y. 283; *Mallory* v. *Travelers' Ins. Co.*, 47 N. Y. 52; *Browning* v. *Home Ins. Co.*, 71 N. Y. 508; *Louis* v. *Connecticut Mut. Life Ins. Co.*, 58 App. Div. 137, 172 N. Y. 659; *Sebring* v. *Fidelity-Phenix Fire Ins. Co.*, 255 N. Y. 382; *Blair* v. *National Security Ins. Co.*, 126 F. 2d 955; *Sun Ins. Office, Ltd.*, v. *Mallick*, 160 Md. 71; *Northwestern Nat. Ins. Co.* v. *Mortensen*, 230 Wis. 377; *Eagle Star & British Dominions Ins. Co.* v. *Moore & Co.*, 9 F. 2d 296; *Hanover Fire Ins. Co. of N. Y.* v. *Merchants' Transp. Co.*, 15 F. 2d 946, 273 U. S. 758.) III. There is no statutory enactment extending to other branches of insurance the definition of what constitutes marine insurance as established under common law and by judicial precedent. (*Blair* v. *National Security Ins. Co.*, 126 F. 2d 955; *Davis Yarn Co.* v. *Brooklyn Yarn Dye Co.*, 293 N. Y. 236.)

*Alfred B. Nathan* for respondent. I. The finding that defendant had no knowledge of plaintiff's criminal record prior to the alleged loss of September 14, 1946, is sustained by the overwhelming weight of the credible evidence. (*Aerated Products Co.* v. *Godfrey*, 290 N. Y. 92; *Baer* v. *American Credit Ind. Co.*, 116 App. Div. 233, 191 N. Y. 540; *Butler* v. *Michigan Mut. Life Ins. Co.*, 184 N. Y. 337; *McCormack* v. *Security Mut. Life Ins. Co.*, 220 N. Y. 447; *Guy* v. *Mead*, 22 N. Y. 462; *Duryea* v. *Zimmerman*, 143 App. Div. 60; *Jackson* v. *Loomis*, 12 Wend. 27.) II. The trial court erred in holding, as matter of law, that the " ordinary " and not the marine rule as to concealment was applicable to the policy in suit. (*Kratzenstein* v. *Western Assur. Co.*, 116 N. Y. 54; *Matter of Ryan*, 291 N. Y. 376; *Bertles* v. *Nunan*, 92 N. Y. 152; *Chute* v. *Insurance Co.*, 172 Minn. 13; *Clarkson* v. *Western Assur. Co.*, 33 App. Div. 23; *Hare & Chase, Inc.*, v. *National Sur. Co.*, 60 F. 2d 909, 287 U. S. 662.) III. Even under the " ordinary " rule, there was a fraudulent concealment. (*Sebring* v. *Fidelity-Phenix Fire Ins. Co.*, 255 N. Y. 382; *Mallory* v. *Travelers' Ins. Co.*, 47 N. Y. 52; *Louis* v. *Connecticut Mut. Life Ins. Co.*, 58 App. Div. 137, 172 N. Y. 659; *Polachek* v. *New York Life Ins. Co.*, 147 Misc. 16, 240 App. Div. 1028; *Hare & Chase, Inc.*, v. *National Sur. Co.*, 60 F. 2d 909, 287 U. S. 662; 3 Couch on Insurance, p. 2518; Patterson, Essentials of Insurance Law, p. 400.)

DESMOND, J.   Plaintiff, a fur merchant, procured from defendant a so-called " salesmen's floater policy " insuring plaintiff against loss or damage to his furs while being transported around the country, for sale to plaintiff's customers. During the term of the policy, some furs were reported by insured to have been stolen from him, and he then brought this suit on the policy, for the amount of his loss. As one of several defenses and counterclaims, defendant pleaded that plaintiff had concealed from it the fact, claimed by defendant to be material to the risk, that plaintiff, six years before purchasing this policy, had been convicted, in a Federal court, of the crime of concealing assets from his trustee in bankruptcy. That counterclaim, which prayed for the cancellation of the policy as void from its inception, was the subject of a separate trial before a Supreme Court Justice without a jury.

The trial court, on conflicting evidence, found as fact that the insured had disclosed his criminal record to defendant, and, accordingly, made an order dismissing that counterclaim on the merits.

When defendant appealed to the Appellate Division, that court, reversing the order below on the facts and the law, took a different view of the fact principally in controversy. Its finding was that there had been no disclosure at all to defendant by plaintiff, of the 1938 criminal judgment. We, stating the result and not the details of our own review of that fact question, conclude that the weight of evidence favors the factual determination of the Appellate Division, that is, that no disclosure was made. That brings us to the question of law in the case.

Plaintiff, taking out this insurance, was asked no questions, signed no application, and furnished no information on this subject. If the so-called " ordinary rule " as to concealments by applicants for insurance, be the one here to be applied, then plaintiff's failure voluntarily to come forward with the story of his past would not void the policy. So held both courts below, citing the leading case of *Sebring* v. *Fidelity-Phenix Fire Ins. Co.* (255 N. Y. 382), where Judge O'BRIEN wrote for this court (at p. 386) : " Concealment is the designed and intentional withholding of any fact material to the risk which the assured in honesty and good faith ought to communicate to the underwriter. * * * If fraud be absent, the assured may remain silent in respect to many matters concerning which the underwriter fails to question him." As we understand the opinions below, both courts decided that plaintiff, even if he failed to bring the matter to defendant's attention, had been guilty of no actual or active concealment and no fraud — indeed, in procuring a previous similar policy from defendant, plaintiff had mentioned to his own broker the conviction, which was, of course, a matter of public record and mentioned in reports readily available to defendant's broker; also the conviction was, as aforesaid, of public record in New York City, where the policies were issued; also some credit agency reports, subscribed to by defendant, showed it. Such being the facts, nondisclosure would not void this policy if, as the trial court held, the " ordinary rule " was the right one for this type of insurance

(*Browning* v. *Home Ins. Co.*, 71 N. Y. 508, 512). (*Merchants & Shippers Ins. Co.* v. *St. Paul Fire & Marine Ins. Co.*, 219 App. Div. 636, affd. 246 N. Y. 616, and *Hanover Fire Ins. Co.* v. *Morse Dry Dock & Repair Co.*, 152 Misc. 111, affd. 244 App. Div. 780, affd. 270 N. Y. 86, were fraud cases and dealt with as such.)

Besides the " ordinary rule ", however, there is, as this court pointed out in the *Sebring* case (*supra*), and had similarly pointed out many years earlier in *Gates* v. *Madison County Mut. Ins. Co.* (5 N. Y. 469), a " marine rule ". " In marine insurance, the insured is bound, although no inquiry be made, to disclose every fact material to the risk, within his knowledge " (*Gates* v. *Madison County Mut. Ins. Co., supra,* at p. 474). In other words, an applicant for marine insurance must state all material facts which are known to .him and unknown to the insurer (*Alexander, Ramsey & Kerr* v. *National Union Fire Ins. Co.*, 104 F. 2d 1006, 1008). In the *Sebring* case (255 N. Y. 382, 386, *supra*) this court said that such was the rule, in New York as elsewhere, as to " marine risks ". But there was nothing " marine " about this policy or the risk insured against, as men ordinarily use the word " marine ". It was, in insurance men's language, a " dry ", not a " wet ", risk. It was, essentially, the same kind of policy a householder buys to cover ·his wife's furs or jewelry on a vacation trip, by land, from one. part of the United States to another. Yet the Appellate Division has here ruled that this policy, and this case, are subject to the " marine rule ", because this kind of policy, with many similar policies, has been, in the insurance trade's parlance, lumped, for convenience and for want of a better label, under the descriptive term: " inland marine insurance ". We find no New York case, other than this one, applying the much stricter " marine rule " to any but true marine policies. On the other hand, there is a case in the Third Circuit Court of Appeals (a court not without experience and authority in matters maritime) which squarely holds that the " marine rule " has nothing to do with so-called " inland marine " policies (*Blair* v. *National Security Ins. Co.*, 126 F. 2d 955). The reasons which brought into being the strict marine insurance law doctrine as to disclosures, go far back into the early days of marine insurance, when sailing ships in faraway seas were

insured in London by underwriters who could get no information except from the shipowners. True, these so-called " inland marine " risks are, in New York, permitted by statute to be written by marine insurance companies, and, to accomplish that statutory grant of authority, the Legislature, in paragraph (a) of subdivision 20 of section 46 of the Insurance Law, has expanded its definition of " marine insurance " to cover " all personal property floater risks ". But that same statutory definition includes such diverse matters as insurance on automobiles, aircraft, bullion, precious stones, evidences of debt, not being transported by water. It seems entirely clear to us that, in listing all that as " marine insurance ", the Legislature never intended to import, into the policies issued thereon, the whole law of marine insurance, including rules having no reasonable reference to those subjects of insurance. As Judge CONWAY, writing for the court in *Davis Yarn Co.* v. *Brooklyn Yarn Dye Co.* (293 N. Y. 236, 247–248), remarked: " Sometimes that which is included by the Legislature within the writing powers of a marine company is purely arbitrary and has nothing to do with what would popularly be thought to be either ocean marine or inland marine risks." The *Davis* opinion (*supra*) went on, immediately after the sentence just quoted, to state briefly the historical reason why these additional writing powers had been granted to marine insurance companies, that is, because those companies had, traditionally, " had to do with the carrying of goods and it was natural to enable and permit them to insure goods in transit on land." Judge CONWAY then suggested that " inland marine " insurance might better be called " transportation " insurance. The *Davis* case did not at all involve our question here, since in the *Davis* case no one suggested the applicability of distinctive marine insurance law. So what was said in the *Davis* case does not point out the decision here, but it helps to show that the label " inland marine " on a policy is a label only. It cannot be denied that, historically as well as logically, marine insurance always involved some sort of vessel, and so a marine insurance policy always involved a maritime risk and for that reason suits thereon were within the jurisdiction of courts of admiralty (see *New England Mut. Marine Ins. Co.* v. *Dunham,* 11 Wall. [U. S.] 1, 35–36; *Jeffcott* v. *Aetna Ins. Co.,* 129 F. 2d 582, 584). Appar-

ently, it was not until the time of World War I that the phrase " inland marine " was coined " to include risks of actual or technical transportation on land " (see *Northwestern Nat. Ins. Co.* v. *Mortensen,* 230 Wis. 377, 383). But the mere use of that label is not, we hold, sufficient warrant for the imposition, on ordinary everyday nonmarine insurance, of any drastic and unique rule of marine insurance law. So heavy a penalty should not, without better warrant, be visited on unsuspecting — and innocent — policyholders. Until the Legislature says otherwise, we hold that the " ordinary " rule, as to nondisclosure, is the one to apply in respect to policies like the one in suit, and that, as to such policies, if the insurer makes no inquiry, and the insured no representation, as to the fact in question, then concealment, short of actual fraud, in respect to such a fact, does not void the policy.

The judgment of the Appellate Division should be reversed, and the order of the Trial Term affirmed, with costs in this court and in the Appellate Division. [See 299 N. Y. 629.]

LOUGHRAN, Ch. J., LEWIS, CONWAY, DYE and FULD, JJ., concur.

Judgment reversed, etc.