WOODS PATCHOGUE CORP., Appellant, *v.* FRANKLIN NATIONAL INSURANCE COMPANY OF NEW YORK, Respondent.

Second Department, April 21, 1958.

*Sidney N. Zipser* and *Howard E. Levitt* for appellant.

*Norman S. Rein, Paul D. Compton, Bert Cotton* and *Eugene Wollan* for respondent.

KLEINFELD, J. This appears to be a case of first impression in New York. The narrow question it raises is whether the insured under an all-risk " Jewelers' Block Policy " (hereinafter called the block policy) is entitled to the protections afforded by the standard fire insurance policy of the State of New York (hereinafter called the standard fire policy), where his loss occurred through fire. The question arises because the policy in suit was not written in the statutory form of the standard fire policy. The proposal (or application) for the policy, executed by the insured (a retail jeweler), and incorporated into the policy, contained certain warranties which concededly were breached. These warranties related to the size of the insured's previous inventories and the percentage of his stock that was kept in the safe when the store was closed. It is undisputed that the standard fire policy contains no provision for such warranties. It is also undisputed that these warranties in the proposal would be of no effect if the standard fire policy were incorporated into insured's block policy, since sections 143 and 168 of the Insurance Law forbid such variation from the standard form of policy for fire insurance. One further facet of this problem is that the standard fire policy is voided by a material misrepresentation only if it is willful, while the block policy contains a proviso voiding it for any material misrepresentation, whether willful or not.

The loss in this case occurred through fire while the store was closed. Upon the insurer's refusal to pay under the policy, the insured brought this action on the policy to recover for the fire loss. The insurer interposed five defenses based on the aforementioned breaches of warranty; it interposed two additional defenses based on the insured's alleged failure to keep adequate inventories, and on alleged misrepresentations as to the nature and amount of the loss. At trial, the insured moved to strike out the five defenses based on breach of warranty. This motion was denied. The insured also asked the trial court to charge the jury that: " the standard fire provisions of Section 168 of the insurance law are incorporated in the fire feature of this coverage." This request was refused; the question of

breach of warranty was submitted to the jury with instructions to find for the insurer if it determined that there had been material misrepresentations; the charge neither mentioned nor required a finding of *willful* misrepresentation. The jury thereupon returned a general verdict for the insurer. The insured appeals from the judgment entered thereon, urging that the trial court erred in not striking out the defenses based on breach of warranty and in refusing to charge that the standard fire policy is incorporated into the insured's block policy, insofar as fire losses are concerned.

Now, what is a "Jewelers' Block Policy"? It is a policy which provides all-risk coverage against loss of the insured's goods, while at his store or in transit; basically, it is a combination policy against theft and fire, with the fire coverage made optional. (In this case, the insured elected to include fire coverage.) In the insurance industry these policies are classified as inland marine insurance, and the rates thereon are computed by an industry-wide rating bureau called the "Inland Marine Insurance Bureau". The rate for fire coverage is computed separately from those for the other types of coverage included in the policy; the premiums for the different coverages are then added together, and the total is charged as a single, lump sum premium for the whole policy. The fire rate is not affected by the fact that other coverages are simultaneously written, except, possibly, to the extent that the over-all premium may be slightly reduced because of the administrative saving involved in writing a "package" policy instead of separate policies for the different coverages. These policies are occasionally written on a "deductible" basis, but the "deductible" provisions never apply to a fire loss.

There are three sections of the Insurance Law which are relevant to the problem at bar. Section 46 (familiarly known as the definition section) is part of article IV, which is entitled "Organization, Licensing and Corporate Procedure of Insurers". Section 46, itself, is entitled "Kinds of insurance authorized". Subdivision 4 thereof defines "Fire Insurance" as "insurance against loss of or damage to any property resulting from fire". Paragraph (c) of subdivision 20 of section 46 defines "Marine Insurance" as "insurance against any and all kinds of loss or damage to: * * * (c) Precious stones, jewels, jewelry, gold, silver and other precious metals, whether used in business or trade or otherwise and whether the same be in course of transportation or otherwise". (The policy defined in § 46, subd. 20, par. [c] is the block policy with which we are here concerned.)

The Insurance Department Revision Note to section 46 (printed in McKinney's Cons. Laws of N. Y., Book 27, part 1, Insurance Law, p. 65) states that: '' The primary purpose of this section is to define in one place the various kinds of insurance recognized and to use these definitions in other sections, particularly those specifying charter powers and capital or surplus requirements.''

Section 168 is entitled '' Fire insurance contract; standard policy provisions; permissible variations.'' Its material portions provide:

'' 1. The printed form of a policy of fire insurance, as set forth in subsection six, shall be known and designated as the ' standard fire insurance policy of the state of New York.'

'' 2. *No policy * * * of fire insurance shall be made * * * on any property in this state, unless it shall conform as to all provisions, stipulations, agreements and conditions, with such form of policy.* [Emphasis supplied.] * * * 5. Appropriate forms of supplemental contract * * * or extended coverage endorsements whereby * * * the property * * * shall be insured against one or more of the perils which the insurer is empowered to assume, in addition to the perils covered by said standard fire insurance policy, may be approved by the superintendent, and their use in connection with a standard fire insurance policy may be authorized by him.''

Parenthetically, it may be here noted that the Insurance Law contains no similar section prescribing the form of a marine insurance policy. Subdivision 1 of section 143 provides that: '' any * * * policy of insurance [which violates] any of the provisions of this chapter shall be valid and binding upon the insurer * * *, but in all respects in which its provisions are in violation of the requirements or prohibitions of this chapter it shall be enforceable as if it conformed with such requirements or prohibitions.''

In light of these statutes, the question at bar may be restated as follows: Does the fire coverage in a block policy constitute '' fire insurance '' within the ambit of section 168, or does the statutory definition of such policy as marine insurance (Insurance Law, § 46, subd. 20, par. [c]) thereby establish a distinct form of insurance whose fire coverage is exempt from the provisions of section 168? This precise question seems never to have been adjudicated in New York. There are, though, tangential holdings here and in other States, and language in certain textbooks which shed some light on it.

In Corpus Juris Secundum it is said that an automobile policy grouping several risks (i.e., liability, fire and theft) has the same legal effect as if there were separate policies for each of the grouped risks. Hence, "where insurance against loss by fire is included with insurance against other risks, the liability for a fire loss is not impaired, and insured is not deprived of the protection of statutory provisions applicable to fire insurance." (44 C. J. S., Insurance, § 336, p. 1284.)

In *American Sur. Co. of N. Y.* v. *Rosenthal* (206 Misc. 485, affd. 1 A D 2d 652) the question was whether the property damage portion of an automobile liability policy was severable from the personal injury portion. The court held that it was, on the ground that these risks were separately stated and their premiums separately fixed, even though the total premium was paid in gross. *Inter alia,* the court pointed out that the insured could have obtained separate policies for the different risks.

*International Ind. Co.* v. *Duncan* (254 S. W. 233 [Tex.]) involved the burning of a car covered by a combination fire and theft policy. The policy contained a "no-mortgage" clause which the insured had breached. A Texas statute prohibited such clauses in fire insurance policies. The insured was permitted to recover on the policy, despite his breach of the "no-mortgage" clause. The court held that the legal effect of the combination policy was the same as if the insured had separate policies for fire and theft, that, as the loss was by fire, the policy must be treated as a fire policy only, and that, so considered, the "no-mortgage" clause was void because of the statutory prohibition against it. A similar holding was made in *Hartford Fire Ins. Co.* v. *Owens* (272 S. W. 611 [Tex.]).

A contrary result on similar facts was reached in *Motors Ins. Corp.* v. *Stowers* (206 Okla. 692). However, we believe the sounder result was that reached in the *International Ind. Co.* case (*supra*).

Turning now to the kind of policy with which we are here concerned, these policies, as previously noted, bear the label "Marine Insurance". Why are they so labeled? The answer is part history and part legislative fiat (cf. *Davis Yarn Co.* v. *Brooklyn Yarn Dye Co.,* 293 N. Y. 236, 247–248). But that label is, in fact, nothing more than a label, and it apparently has no effect on the substantive rights of the parties (*Stecker* v. *American Home Fire Assur. Co.,* 299 N. Y. 1, 7–8). In *Stecker* the court cited with approval the holding in *Blair* v. *National Security Ins. Co.* (126 F. 2d 955). In *Blair* (p. 957) appear the following pertinent words concerning section 46 of the Insurance Law (the definition section): "we cannot deduce

anything from the definition section. * * * The definition then is to license certain types of corporate forms to do certain classified kinds of business. The classification is negative to any substantive rule of law governing any particular risk.''

Remarkably similar to the case at bar is *Fireman's Fund Ins. Co.* v. *Vermes Credit Jewelry* (185 F. 2d 142) which involved a similar policy (issued in Minnesota under Minnesota law), a similar warranty, similarly breached, a similar standard fire policy statute, a similar fire loss, a similar suit to recover on the policy, a similar defense of breach of warranty, and a similar contention by the insurer that the block policy was not a fire policy, but an inland marine policy insuring against a combination of inseparable risks, which was not subject to the provisions of the standard fire policy statute. The court allowed a recovery on the policy despite the breach of warranty. Its opinion is worth quoting at length because of its relevancy to the problem at bar (pp. 144–145):

'' Whether a policy of insurance is a fire insurance contract, we think, depends not upon what the policy is labeled or how the insurance is classified, but upon the risk or risks which are insured against. * * * It seems safe to say that a Minnesota policy insuring a stock of goods at a fixed location against loss by fire is, to that extent at least, a fire insurance contract, even though it covers other risks * * *.

'' The insurance company argues, however, that recent State legislation has had the effect of making the standard fire policy law completely inapplicable to policies such as the policy in suit. The insurance company asserts that * * * the Legislature, in defining inland marine insurance and establishing an inland marine insurance rating bureau, recognized that such insurance is of a different type than fire insurance; that the definition of ' fire and allied lines of insurance ' in subdivision 3 of § 2 * * * and the definition of ' inland marine insurance ' in subdivision 4, are mutually exclusive; that the Chapter repealed all laws and parts of laws which were inconsistent with its provisions; * * * that the writing of these types of insurance [personal property floater risks and inland marine risks] was authorized by law and was regulated by an order of the Insurance Commissioner * * * which includes ' jewelers ' block policies ' under ' personal property floater risks,' and classifies such risks in the kinds of risks which ' marine and/or transportation policies may cover * * *.'

'' It seems to us * * * that, while the writing of a ' jewelers ' block policy ' by a qualified insurance company is authorized by Minnesota law, there is no express statutory pro-

vision permitting the insurer to limit or condition its liability for a fire loss on a stock of jewelry by inserting in such a policy a warranty not authorized by [the standard fire policy statute]. If the insurance company in the instant case had issued one policy covering the risk of loss by fire and had covered all other risks in a separate policy, the insured could have recovered its loss regardless of the warranty in suit."

Of course, *Vermes* is not a binding authority in New York, but we find it a most persuasive precedent. In our case, as in *Vermes,* the insured could have chosen to take its fire coverage in a separate policy, either from the same company or another. If it had done so, the fire insurance policy would necessarily have been in the statutory standard form, and it could have recovered the fire loss despite the breached warranties. Moreover, a holding here, similar to that in *Vermes,* would accord with the general purpose and intent of the standard fire policy statute. This purpose is lucidly expressed in *Hicks* v. *British America Assur. Co.* (162 N. Y. 284), where the court said (pp. 291–292, 294).

"The legislature * * * has prescribed a standard form of policy for the protection of both insurer and insured. It contains provisions specially protecting the insured from harsh methods by insurance companies. On the other hand, it provides that which experience has shown to be necessary in order to protect insurance companies from being victimized through fraud" and (p. 294):

"Upon the passage of this important legislation [adopting the standard fire policy] the policy of insurance was no longer of special moment except as evidence that a contract to insure had been made; for it was no longer competent for the parties to incorporate into the policy any provision whatever, outside of those embraced within the terms of the standard policy".

Two other points should be noted. The fact that the form of the block policy may have been approved by the Superintendent of Insurance does not make it valid, if in fact it violates the standard fire policy statute (cf. *Kocak* v. *Metropolitan Life Ins. Co.,* 237 App. Div. 780, affd. 263 N. Y. 518; *Matter of Metropolitan Life Ins. Co.* v. *Conway,* 252 N. Y. 449, 451; 13 Appleman on Insurance Law and Practice, pp. 8–9). And, of course, there is the well-settled principle that if an insurance policy is of doubtful construction, the doubt must be resolved in favor of the insured and against the insurer (cf. *Berkshire Life Ins. Co.* v. *Weinig,* 290 N. Y. 6, 9–10).

In light of all the foregoing, we reach the following conclusions:

1. The characterization of the block policy as marine insurance, in section 46 of the Insurance Law, is nothing more than a "label";

2. That "label" does not affect the substantive rights of the parties with respect to the various risks covered by the policy;

3. The policy at bar is a severable grouping of separate risks;

4. The section 46 definition of a "Jewelers' Block Policy" as "marine insurance" does not withdraw it from the scope of section 168 (the standard fire policy statute) insofar as the fire coverage of the policy is concerned;

5. The standard fire policy is incorporated into the policy at bar;

6. As the warranties in the policy at bar are not within the standard fire policy, their breach does not void the policy, and

7. The trial court's refusal to strike out the defenses based on breach of warranty, and its refusal to charge that the standard fire policy was incorporated into the policy at bar constituted prejudicial error.

If we were to hold otherwise, we would open the door wide to progressive emasculation of the standard fire policy law as insurers continue their present trend towards the writing of all-risk combination policies in ever-broadening fields. That result, of course, would thwart the sound legislative purpose that lay behind enactment of the standard fire policy statute. If the salutary protections of the standard fire policy are to be removed from fire insurance, merely because such policy is written in combination with other coverages, it is for the Legislature to say so, and, moreover, in clear, unambiguous language. Until the Legislature itself expressly excludes policies like the one at bar from the ambit of section 168, we may not take it upon ourselves to do so.

The judgment should be reversed and a new trial should be granted, with costs to abide the event.

MURPHY and UGHETTA, JJ. (dissenting). The policy issued to the appellant by the respondent is known in the trade as a "Jewelers' Block Policy." It is an all-risk policy, and fire is one of the risks it covers. This form of policy is expressly authorized by statute (Insurance Law, § 46, subd. 20, par. [c]; §§ 141, 184, subd. 1). The policy provides a form of insurance independent of that set forth in the standard fire policy. (Insurance Law, § 46, subd. 4.) The block policy itself is a

complete contract and should not be interpreted under the provisions of another contract.

Based on admittedly false representations, which were proved to be material, appellant obtained such a policy from the respondent, which policy included fire coverage. Such fire coverage if obtained by means of the standard fire policy would have required the payment of a substantially larger premium.

There is no justification for resorting to the artificial process of incorporating the terms of the standard fire policy into the block policy, but if there be justification, the process of incorporating does not produce a different legal result. With regard to false and material representations, the difference in language between the two policies is nebulous. The standard fire policy provides that it shall be void if the insured has "*wilfully* concealed or misrepresented" (emphasis supplied) any material fact. The block policy is similar except that the word "wilfully" is not included. It may well be that the word "wilfully" in the standard fire policy modifies only the word "concealed", and not the word "misrepresented". It is easy to understand a willful concealment. It is difficult under the facts of this case to understand a misrepresentation that is not willful.

We see no error in refusing the requests to charge. The requests were to charge abstract legal propositions.

NOLAN, P. J., and BELDOCK, J., concur with KLEINFELD, J.; MURPHY and UGHETTA, JJ., dissent and vote to affirm, with memorandum.

Judgment reversed and a new trial granted, with costs to abide the event.