■ JONARI MANAGEMENT CORP., Respondent, v ST. PAUL FIRE & MARINE INSURANCE COMPANY, Appellant. — Judgment, Supreme Court, New York County (Scott, J.) entered May 13, 1980, upon a unanimous jury verdict in favor of the plaintiff in the sum of $51,856.25 for personal property damage and $96,000 for lost rental income, affirmed, with costs. The dissent fairly sets forth the facts upon which this action is based. Appellant, St. Paul Fire & Marine Insurance Co., contends that inasmuch as the plaintiff was not awarded the full amount claimed, a finding of fraud by the jury is established as a matter of law. We disagree. As long as there is a sound basis that the claim

was made in good faith, with no intent to deceive, the disparity between the amount sued on and the amount awarded by the jury does not establish fraud. (See *Saks & Co. v Continental Ins. Co.*, 23 NY2d 161, 165.) The policy covering Jonari, the insured, contained the standard concealment and fraud clause mandated by section 168 of the Insurance Law. However, unintentional errors or omissions on the part of the insured would not trigger the clause and thus relieve the insurer of all liability. Materiality is the key threshold question in these situations. Without a material misrepresentation or misstatement, no action will lie for fraud or deceit. (24 NY Jur, Fraud and Deceit, § 129.) Likewise, no affirmative defense would be effective (see *Sebring v Fidelity-Phenix Fire Ins. Co. of N. Y.*, 255 NY 382, 387), and the Trial Judge (Scott, J.) quite properly left this question to the jury. (*Stecker v American Home Fire Assur. Co.*, 299 NY 1; *Happy Hank Auction Co. v American Eagle Fire Ins. Co.*, 1 NY2d 534, 539.) Two questions were asked of the jury which are significant: (1) "Did the plaintiff wilfully and fraudulently place in the proof of loss, a statement of property it did not possess or did it place a false and fraudulent value upon the property?" (2) "Did the plaintiff materially alter the lease agreement with an intent to defraud the defendant and collect under the provisions of this policy?" To both these questions the jury unanimously replied "No." Statements made by the insured during pretrial and trial proceedings are not relevant to the insurer's defense of fraud and false swearing; it is only material statements made prior to the institution of the action which must be looked to. (*Halbreich v Travelers Fire Ins. Co.*, 238 App Div 841, 842; see *American Paint Serv. v Home Ins. Co. of N. Y.*, 246 F2d 91.) Here, with the conflicting testimony and the contested claims properly before the jury, as a factual issue, the insurer's defense was rejected. The disallowance of the claim for "Improvements and Betterments" does not weaken the basis of the factual determination by the jury of liability for other claims. It cannot be said that the jury could not have reached the conclusion they did upon a fair interpretation of the evidence. (Cf. *Flynn v City of New York*, 35 AD2d 936, affd 29 NY2d 715.) Nor was the jury's award contrary to the weight of the evidence or without a rational basis. (Cf. *Munz v Prestwick Press*, 46 AD2d 682; *Moorhead v Hummel*, 36 AD2d 682.) In this action, the fire which caused the loss is well documented, and it is only the amount of lost rents and personal property destroyed which had to be determined (cf. *Sunbright Fashions v Greater N. Y. Mut. Ins. Co.*, 34 AD2d 235, affd without opn 28 NY2d 563). In view of the jury's careful consideration of Jonari's entire claim, which resulted in a rejection of any claim for improvements and betterments and a reduction in the amount of "Personal Property Loss" from $72,480.25 claimed to $51,856.25, we cannot say the award is excessive. Concur — Kupferman, Markewich and Lynch, JJ.

Murphy, P. J., dissents in a memorandum as follows: Dr. Robert Mittleman, an optometrist, and Dr. Arthur Zuckerman, a dentist, were principals of plaintiff Jonari Management Corp. (Jonari). Pursuant to a leasing arrangement with O'Brien Enterprises, Inc. (O'Brien), Jonari began the operation of a medical center at the subject premises on July 14, 1975. O'Brien, at its own expense, had renovated the premises for Jonari's use under the leasing arrangement. For the sake of brevity, those renovations will be called the "improvements and betterments". Jonari, in turn, sublet the premises to 15 different medical disciplines. Some of the subleasing arrangements were in writing; others were oral. On July 28, 1975, a fire extensively damaged the premises. Jonari later filed claim under its policy with defendant St. Paul Fire and Marine Insurance Company (St. Paul). It sought (i) $72,480.25 for destruction of personal property, (ii) $36,133.02 for destruction of "improvements and

betterments", and (iii) $96,000 for loss of rent from the subtenants. The difficulties in this case arise from St. Paul's discovery, in the pretrial stage, that two leases existed between Jonari and O'Brien. Each lease was dated March 24, 1975; each was signed by Donald O'Brien and Arthur Zuckerman for the respective parties. The leases were identical except for the fact that Exhibit No. 2 contained an additional clause numbered 45. Clause 45 reads as follows: "Clause 45 — Notwithstanding any other provision to the contrary, it is understood and agreed between the parties, that upon completion of landlord's work on Exhibit A, to be performed for tenant's exclusive benefit and interest, tenant shall in the event the demised premises are damaged by fire or other cause, repair and rebuild the same to the extent of the available insurance proceeds for this work, within 60 days or have the right to cancel this lease without any further obligations." At trial, Drs. Mittleman and Zuckerman maintained that Jonari had an insurable interest in the "improvements and betterments" because they had paid a higher rent in consideration therefor. St. Paul primarily relied upon clause 1(c) of insuring agreement 1 to establish that Jonari did not have an insurable interest in the "improvements and betterments". Clause 1(c) reads as follows: "1. PROPERTY COVERED. This Insuring Agreement covers * * * C. *Improvements and Betterments,* meaning the Insured's use interest in fixtures, alterations, installations or additions comprising a part of the described building(s) occupied but not owned by the Insured and made or acquired at the expense of the Insured exclusive of rent paid by the Insured, but which are not legally subject to removal by the Insured". Clause 45 was of critical importance in this proceeding because it tended to support Jonari's contention that it had an insurable interest in the "improvements and betterments". Thus, it was important for St. Paul to establish whether clause 45 was actually a part of the parties' original agreement or whether it had been added after the fire to support the plaintiff's claim under the policy for the "improvements and betterments". At his examination before trial, Dr. Mittleman stated that he did not know when clause 45 was added to Exhibit No. 1. Dr. Zuckerman stated, at the pretrial stage, that clause 45 was added before the fire. In his deposition, Donald O'Brien stated that clause 45 was added after the fire. When Dr. Mittleman was asked at trial to comment upon Donald O'Brien's depositional statement concerning clause 45, he continued to assert his ignorance as to the date the clause was added. At trial, Dr. Zuckerman testified that he did not remember when clause 45 was added. James Manning, O'Brien's attorney, confirmed that clause 45 had been added after the fire at the request of the parties. During trial, Jonari's attorney eventually conceded that clause 45, as founded in Exhibit No. 2, was added after the fire. Both leases in evidence contain the following provision mandated by section 168 of the Insurance Law: "This entire policy shall be void if, whether before or after a loss, the insured has *willfully* concealed or *misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto." The trial court charged, *inter alia,* upon St. Paul's affirmative defense that Exhibit No. 1 had been fraudulently changed with the addition of clause 45. The jury was also asked to answer this second special question: "2. Did the plaintiff materially alter the lease agreement with an intent to defraud the defendant and collect under the provisions of this policy?" The jury answered this second question in the negative. Upon the separate monetary verdicts rendered, it awarded Jonari "$0" for "Betterments and improvements". Consequently, Jonari's entire claim of $36,133.02 in this area was rejected. The jury awarded $96,000 for loss of rentals and $51,856.25 for personal property loss.

St. Paul contends that the entire award should be set aside because of Jonari's fraud. Alternatively, it challenges the award for loss of rentals as excessive. The first question presented is whether the entire policy should be voided, as a matter of law, because of Jonari's submission of a fraudulent lease, i.e., Exhibit No. 2. From the trial concession that clause 45 was added after the fire, it is evident that Jonari's principals were not being truthful in answering St. Paul's queries, before or at trial. From that concession, it must be concluded that Dr. Zuckerman, a signatory of both Exhibit Nos. 1 and 2, was fully aware that clause 45 was added after the fire. Undoubtedly, both parties to the leasing arrangement realized that clause 1(C) of insuring agreement 1 precluded any recovery for "Improvements and Betterments" under Exhibit No. 1. To buttress Jonari's position with regard to this claim, clause 45 was added to Exhibit No. 1. Clause 45 was obviously tailored to the exigencies of the situation. Jonari was only required to make repairs to the extent of available insurance proceeds. Since it was required to make repairs to that extent, Jonari could make a reasonable argument that it had an insurable interest in the "improvements and betterments". Jonari's preparation and submission of Exhibit No. 2 must be recognized as a deliberate attempt to defraud the insurer. Although Jonari did not recover on that particular claim, that fact may not be validly advanced as a reason for excusing or overlooking its fraudulent conduct. The jury's negative answer to question 2 was clearly against the overwhelming evidence in this case and it should be set aside as a matter of law. The policy should be voided and all recovery denied because of the fraudulent conduct of Jonari's principals in executing Exhibit No. 2 and in relying upon it as a basis for its claim for "improvements and betterments". (*Sunbright Fashions v Greater N. Y. Mut. Ins. Co.,* 34 AD2d 235, affd 28 NY2d 563; *Saks & Co. v Continental Ins. Co.,* 23 NY2d 161.) Since this case should be dismissed as a matter of law, the second question is reached solely for academic reasons. The second question is whether the jury award of $96,000 for loss of rentals was excessive. Clause 2A of indorsement number 4 to insuring agreement 1 provides: "2. THE COMPANY SHALL BE LIABLE FOR: A. The actual loss sustained by the Insured resulting directly from necessary untenantability, but not exceeding the reduction in rents less charges and expenses which do not necessarily continue during the period of untenantability for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property herein described as has been damaged or destroyed, commencing with the date of such damage or destruction and not limited by the date of expiration of this policy". Even though the medical center had only been in operation for two weeks, Jonari's evidence suggested that its monthly rent roll would be $9,345.50 or approximately $112,146 per year. For purposes of this discussion, those figures will be accepted as true even though they appear to be somewhat speculative. Jonari's expert, Strongwater, testified that the "improvements and betterments" could be replaced within four months at a cost of $36,133.02. Its other expert, Weintraub, stated that the medical equipment could be replaced in 45 to 60 days. Its own adjuster, Levy, submitted a claim for lost rentals in the sum of $32,000. This claim was based upon the projection that the premises would be vacant for a four-month period. In this state of the record, plaintiff Jonari argues that it would have taken longer than four months to repair the remainder of the building. The record, however, does not contain any evidence to show how long it would take O'Brien to make repairs to the building so that the medical center could become fully operational. The jury was thus left to speculate upon that fact. In the absence of any proof that the repairs to the building would take longer than four months, the verdict of $96,000 should be set aside as excessive and the matter should be remanded for a new assess-

ment. Upon remand, the jury should be required to detail the amount of the award allocated for lost rent and the amount to be deducted therefrom for charges and expenses saved by Jonari during the period of rebuilding. Accordingly, the judgment of the Supreme Court, New York County (Scott, J., and a jury), entered May 13, 1980, awarding plaintiff $51,856.25 for personal property loss and $96,000 for loss rentals, should be reversed, on the law, and the complaint should be dismissed.