4429.   WRIGHT *v.* BANK OF SOUTHWESTERN GEORGIA.

1. This case is controlled by the decision of this court in *Benford* v. *Shiver,* ante, 135 (78 S. E. 860).

2. The ground of the so-called motion for a new trial, relating to the absence of the movant when the case was tried, was in effect a motion to set aside judgment, made at the term at which the judgment was rendered; and since it was shown to the court that the defendant was providentially prevented from attending court, by an illness, which rendered it impossible for her to leave her home, and that she had previously filed a meritorious defense, which, if supported by evidence, would have relieved her from any liability upon the notes which were the basis of the suit, the judgment should have been set aside, in order that the defendant might be heard on the substantial issue raised by the pleadings.

3. Proof that the defendant was a married woman who was not separated from her husband was, without more, not sufficient to disprove or impeach the statement in her affidavit that she had no one by whom she could send a physician's certificate or otherwise notify her counsel that she was physically unable to attend the court. Even if there be a presumption that every husband does his duty, the duty of making a showing for a continuance for his wife in a suit upon a note, evidencing a debt which was originally the debt of the defendant's first husband, is not imposed by law upon the second husband as the successor to the marital offices of his predecessor.

DECIDED AUGUST 30, 1913.

Complaint; from city court of Leesburg—Judge Long. April 19, 1912.

*R. L. Maynard, W. G. Martin,* for plaintiff in error.

*Ellis, Webb & Ellis,* contra.

RUSSELL, J. The Bank of Southwestern Georgia brought suit against Cynthia Styles Wright on two promissory notes; one dated April 25, 1903, and the other February 18, 1905. The defendant filed an answer, in which she averred that the notes were without consideration as far as she was concerned, for the reason that they were given for the debt of her former husband, Jesse Styles, and that her assumption of his debt was null and void. When the case was called for trial the defendant was absent. Her counsel stated to the court that they did not know why she was not present, and for that reason they were unable to make a showing for continuance. In the absence of a legal showing for a continuance, the trial judge very properly proceeded with the trial; and upon the introduction of testimony in behalf of the plaintiff, judgment was rendered in its favor (the case being, by consent of counsel

tried by the court without a jury). During the term and before the adjournment of the court the defendant moved for a new trial. The motion for a new trial, in addition to the three general grounds, asked that the judgment be set aside and a new trial be granted upon the ground that on the date of the trial the defendant was at her home, sick with malarial fever, and unable, on account of her illness, to advise her attorneys of the fact of her illness. The movant's residence was eighteen miles from Leesburg, where the court was held. This special ground of the motion was supported by the affidavit of the defendant's attending physician, stating that she was suffering from chills and malarial fever, and that on July 18 (the date of the trial) she could not safely attend court or go anywhere else, and that she still was under his treatment. It appears also, from the affidavit of her counsel, that she had been present at the court during every preceding term thereof since the suit was filed in March, 1911, and that when she did not appear they tried to get some information of her by telephone, but were unable to do so. The bank made a counter-showing to the effect that the court was in session three days before the date upon which the judgment was rendered, and that she had sufficient time to furnish the court with proper affidavit of her sickness, if she was ill; that she failed to allege, in the affidavit filed in support of this ground of the motion, she would testify in the trial of the case; and, furthermore, at that time that she was a married woman and lived with her husband, Shade Wright. The trial court sustained the counter-showing and refused to set aside the judgment and grant a new trial.

We think this case is fully controlled by the ruling of this court in *Benford* v. *Shiver,* ante, 135 (78 S. E. 860). The court was fully authorized to refuse the motion for a new trial, so far as it was predicated upon the general grounds, because the testimony for the plaintiff, not being disputed, required the judgment which was rendered. We think, however, that the court erred in not setting aside the judgment and reopening the case, so as to give the defendant a day in court. While the motion under consideration was presented as a ground of a motion for a new trial, it was filed as a separate paper and after the original motion for a new trial; and though it was denominated as a ground of the motion for a new trial, it was in effect a motion to set aside the judgment. In

this ground, separately filed, it is specifically asked that the judgment be set aside. This is all that was or could have been asked in the premises; for the court did not err in ruling the case to trial upon the mere showing by counsel that their client was absent. But there subsequently developed a reason why the judgment should be set aside. Generally a motion to set aside a judgment may be filed at any time within three years. Of course, therefore, it can be filed at any time during the term at which it was rendered; and we know of no reason why such a motion should not be considered when denominated as a ground of a motion for a new trial, which must be filed during the term.

In the counter-showing of the plaintiff, the point is made that in the defendant's showing it does not appear what she expects to testify upon another trial of the case. The absence of a party, especially when he is the sole party upon his side of the case, may of itself constitute a good ground for a continuance. The defendant had the right to be present, if for no other reason than to assist her counsel in the selection of the jury and in the conduct of the case, and in suggestions upon cross-examination of witnesses for the opposite party; and she had a plea, to sustain which it was evident she might and would properly be a witness. If she had been present, probably she might have been able to inform her counsel of other sources from which information might have been derived in support of her answer. A motion to set aside a judgment is not confined, like a motion in arrest, to matter appearing upon the record or appearing to be absent from the record; and as was pointed out in the case of *Benford* v. *Shiver,* supra (in which the facts are quite similar to those involved in this case), a judgment should be set aside when it appears that a party who had filed a substantial and meritorious defense was kept away from court under such circumstances as that the court should have continued the case upon a timely motion for a continuance which informed the court as to the true reason of the party's absence.

A wife whose deceased husband has left no children, and who is by law his sole heir, can take his property and, by paying his debts, avoid an administration, if all his creditors consent; and it may be that there is nothing in the defense that the debt evidenced by the notes is the debt of the defendant's deceased husband. Perhaps, however, a wife who assumes one of her husband's debts,

without the consent of the other creditors who have claims against his estate, would get no title to such property as was left by her husband. And we reverse the judgment with the less reluctance because the character of the articles originally sold by the plaintiff bank to the defendant's husband is such that it may be true that at the time the widow gave her notes in lieu of the notes given by her deceased husband to the bank, the corn, fodder, etc., had been used or dissipated; and in that case, if the husband left no other property, the making of the notes by the wife would be nothing more nor less than the assumption of her husband's debt. The evidence may show that by giving the notes the wife merely assumed the pre-existing debt of her husband; or even if that is not true, the defendant may otherwise sustain her plea of failure of consideration.

It is not disputed that the defendant was eighteen miles from court at the time the judgment was rendered, and seriously ill with chills and malarial fever, and the seriousness of her illness is indicated by the affidavit of the attending physician, who, on July 26, swore that she still was unable to leave her home for any purpose whatever.

The refusal to set aside the judgment upon the ground of the defendant's illness seems to have been based on the fact that the court was in session three days before the date upon which the judgment was rendered, and that the defendant then had a husband who lived with her and who could perhaps have brought information of his wife's sickness to her counsel. It would seem that in a state of ideal connubial felicity nothing would be more natural than for a husband to find pleasure in the prompt and eager discharge of his spouse's slightest wish, to say nothing of that impelling sense of duty which would unconsciously actuate him to attend to any of her business affairs, and thus relieve her from even the smallest annoyance, but the evidence does not disclose whether the tie which bound Shade to Cynthia was the silken cord of love or the hateful chain of convention. As applied to modern wives and husbands the phrase "living together" does not always import that they are living at the same place. The expression merely implies that there has been no separation, voluntary or legal, which can legally be said to have released either from their duties to the other under the strict letter of the law. We think, there-

fore, that the judge was not authorized to assume, from the testimony to the effect that Cynthia lived with Shade, that Shade was living with Cynthia, or at the house where Cynthia abode at the time of the trial, or during the three days before the trial, or, even if he were there, that he was bound to journey eighteen miles to Leesburg to inform the defendant's lawyers that his wife was sick. No presumptions arising from evidence can be indulged except such as are authorized by law; and as it was not the duty of the defendant's husband to assist her counsel, or give them information as to his wife, certainly it can not be presumed that he would do this. But even if the husband should have performed this service for his wife, we hardly think the wife should be charged with the failure of her husband to do his duty. A general enforcement of this principle would be "hard law" for wives. Proof that the defendant was a married woman who was not separated from her husband was not, without more, sufficient to disprove and impeach the statement in her affidavit that she had no one by whom she could send the physician's certificate or otherwise notify the court that she was physically unable to attend the court. Even if there be a presumption that every husband does his duty, the duty of making a showing for a continuance for his wife in a suit upon a note, evidencing a debt which was originally the debt of her first husband, is not imposed by law upon the second husband as the successor to the marital offices of his predecessor.

*Judgment reversed.*