MISSISSIPPI BEN. ASS'N *v.* MAJURE.

(In Banc. Jan. 27, 1947.)

[29 So. (2d) 110. No. 36312.]

**Livingston & Fair,** of Louisville, and **Cowles Horton,** of Grenada, for appellant.

Henry L. Rodgers, of Louisville, for appellee.

188

**L. A. Smith, Sr., J.,** delivered the opinion of the Court.

This action originated in the court of a justice of the peace, whence appellant here appealed to the Circuit Court of Winston County, and from an adverse judgement there, it appealed here.

A widowed mother obtained a burial insurance policy from appellant on December 15, 1936 in consideration of the application "and the payment of $1.00 by the head of the family as membership fee and further payments of $1.00 on the 15th day of each month hereafter," (for which) "the Mississippi Benefit Association, upon receipt of notice of the death of any of the following persons residing together as one family," naming them, contracted to furnish a funeral at a cost not exceeding $150. Among the children listed was Nyles Majure, agreed to be the same person as Gordon Niles Majure, deceased, who was twenty years of age at the time of his death, and unmarried.

The record contains an agreed statement of facts to the effect that the above statements are true and in addition, that on September 18, 1944, Niles Majure lost his life in the country of Holland in active combat, as a soldier of the United States, from enemy action; that he was drafted into the army from Winston County, Mississippi, at a time when he was living and residing with his mother and the other members of the family mentioned in the policy as one family; that he removed from Mississippi under military orders; that his death did not

occur "in any state of the United States" but that he died in the country of Holland. Notice of the death of the said Niles Majure was given appellant, and it was requested to make the payment of $150 in cash. It was also agreed that the appellant association had no representative in Holland and carried on no business there. There were other matters in the agreed statement of facts of which we need take no notice because of the agreed issues before us.

Both parties agreed that the questions involved were: "Whether or not Niles Majure was residing together as a member of the family of Mrs. Jeffie Majure and the other members mentioned in the policy at the time of his death"; and (2) "whether or not the phrase 'removal to another state' limited the policy to mean 'a state of the United States.'"

The policy contained this special provision, which is pertinent here: "Should the insured hereunder remove to another state and should the Association be not represented there, then this contract if in full force and effect, will become a 'Cash Policy' in lieu of the funeral expenses for '100 per cent' of the amount applicable shown above."

The policy itself offers no definition of "state"; contains no specific limitation to the United States of America or the members thereof; and does not expressly provide that death in a foreign country is not covered by the policy. The first inquiry is, what does the language, "remove to another state," mean.

Appellant cites for our consideration United States Fidelity & Guaranty Co. v. Wilson, 184 Miss. 823, 185 So. 802, where we held that althought policies are to be construed strongly against insurer, construction must be reasonable, and not a strained or unjust interpretation of the contract. That is certainly the law. In the construction of this policy, which did not have its meaning made clear when its text was prepared, judicial clarification is necessary. This being true, in our judgment, we must follow another well-recognized rule governing ambiguous insur-

ance contracts, as announced in Georgia Casualty Company v. Cotton Mills Products Co., 159 Miss. 396, 132 So. 73, 75, ''where the terms of an insurance contract are ambiguous or doubtful, the contract is to be construed most favorably to the insured, and against the insurer.'' What is a ''state''? In the Cherokee Nation v. State of Georgia, 30 U. S. 1; 5 Pet. 1, 8 L.Ed. 25, the United States Supreme Court, in dealing with a controversy between the Cherokee Indians and the State of Georgia, construing the term ''foreign state'' in the Federal Constitution, held the Cherokees to be a ''state.'' According to a headnote, ''They have been uniformly treated as a state since the settlement of our country. The numerous treaties made with them by the United States recognize them as a people capable of maintaining the relations of peace and war, and of being responsible in their political character for any violations of their engagements, for any aggression committed on the citizens of the United States by any individuals of their community.'' In O'Connor v. State Tex. Civ. App., 71 S. W. 409, 410, it is said that ''a state is 'a political community, organized under a distinct government, recognized and conformed to by the people as supreme; a commonwealth; a nation.' ''

This Court, in a case involving the issue, whether Mississippi as one of the Confederate States was identical with Mississippi as one of the United States, following the termination of the war between the States, and the effect of the surrender of the Confederacy on ''treasury notes'' issued by the former, sought to be used to pay taxes to the provisional government of the latter, defined a ''state'' as: ''a body politic, or a society of men, united together to promote their safety and advantage, by means of their union; who are guided and directed by the public political authority—the government. Government is the ligament that holds the political society together, and when that is destroyed, the society as a

political body is dissolved." Thomas v. Taylor, 42 Miss. 651, at page 706, 2 Am. Rep. 625.

Since the policy here does not limit its coverage to member states of the American Union, we cannot do so; and since Holland is a state, where Niles Majure died, and where appellant had no representation, the appellant became liable to pay $150 in cash on his death, instead of furnishing the funeral described in the policy. In our judgment, the effect of the verbiage of this policy means that the Association would be liable for the cash payment, if an insured died in any locality under the dominion of an organized government, outside of the State of Mississippi, provided the circumstances otherwise complied with the terms of the insurance contract.

Had Niles Majure removed from Mississippi at the time of his death? We have decided the meaning of "state," supra. "Remove" is defined in Webster's New International Dictionary, 2nd Ed., and one of the definitions is "to change or shift the location, position, station, or residence . . . usually with *to* and specified place; as, *to remove* the troops to the front. . . ."; and "remove commonly applies to a change of station or position." This policy does not itself define "removed," or provide that it means the whole family as a unit must remove together. It contains no condition prescribing whether the removal must be voluntary or involuntary. Here, this young man was caused to remove from Mississippi by the United States Government, and he was thus brought within the meaning of "remove" as used in the policy. The provision itself was undoubtedly intended by the appellant Association to save itself the added expense of a funeral in another locality, out of Mississippi, where it had no agents. The fact that the funeral itself would represent only a value of $150 to assured did not mean that the cost and expense to appellant in a remote locality would not exceed that amount. Therefore, under the circumstances of such removal to another state where appellant had no repre-

sentation, the policy would then become a cash policy for the amount of the cost of the funeral, $150, in lieu of funeral items, such as "casket, hearse, embalming, outside box, and burial garment." The policy is one of life insurance.

Indeed, we have heretofore held that a burial insurance contract constitutes life insurance. Peterson et al. v. Smith, 188 Miss. 659, 196 So. 505. It is so regarded elsewhere, as attested by the numerous authorities from other jurisdictions listed in the case just cited. See also, 44 C. J. S., Insurance, Sec. 27, p. 486. This provision of the policy, converting into a "cash policy," as pointed out supra, and the contract itself constituting life insurance, make it immaterial that no expense was incurred in burying the young soldier by the mother of deceased, and that the expense of the funeral was defrayed by the United States Government. The contract was not one of reimbursement under the conditions, but a "cash policy,"—a life insurance policy. In Clegg v. Johnson, 164 Miss. 198, 143 So. 848, 850, we said: "It is wholly immaterial whether appellee went to any expense or not in burying her husband; the association obligated itself absolutely to pay over to her on the death of her husband $150 to cover the expense of the burial."

We think the case of Wright v. Bank of Southwestern Georgia, 13 Ga. App. 347, 79 S. E. 184, 186, disposes, as a matter of law, if any citation be needed, of the question whether or not Niles Majure was residing together with and as a member of his mother's family at the time of his death. It was there said: "The phrase 'living together' does not always import that they are living at the same place. The expression merely implies that there has been no separation, voluntary or legal, which can legally be said to have released either from their duties to the other under the strict letter of the law." The mother continued to pay the monthly premiums on the policy; his name was never stricken therefrom; he was still a minor; and his

entering the army was by force of the draft. His induction into the army by such means did not change his legal status in his relationship with his family and his continued policy inclusion.

In view of what we have said, supra, it follows that, in our opinion, the coverage of the policy still extended to Niles Majure as of the time of his death, and appellant became liable to pay the ''cash policy'' of $150 for which this action was brought. The judgment of the trial court was correct, and it is

Affirmed.