[Civ. No. 18398. Second Dist., Div. Three. Feb. 7, 1952.]

CLARA OLSON et al., Plaintiffs and Appellants, v. STANDARD MARINE INSURANCE COMPANY, LTD. (a Corporation), Defendant and Appellant; HIRSCHFIELD INSURANCE AGENCY, INC., (a Corporation) et al., Respondents.

Irwin R. Buchalter and Jerry Nemer for Plaintiffs and Appellants.

Fulcher & Wynn and Walter R. Trinkaus for Defendant and Appellant.

Spray, Gould & Bowers for Respondents.

VICKERS, J. pro tem.—On December 5, 1947, the defendant insurance company issued its "Jewelry-Fur Floater" insurance policy reciting that it "Does Insure Mrs. Clara Olson Hereinafter called the Assured, Whose address is 649 Jones Street San Francisco, California . . . to an amount not exceeding Eighteen Thousand Seven Hundred Twenty and No/100 Dollars On Jewelry and/or Furs, as per schedule attached, *the property of the Assured and members of his or her family of the same domicile,* whilst in all situations, against All Risks. . . ." (Italics ours.) Attached to the policy was a schedule which itemized the articles covered and the amount of coverage for each. The policy also contained certain conditions. Those that are material to this proceeding will be referred to hereafter. On February 26, 1948, the defendant insurance company issued extended endorsement No. 1 whereby it insured a Hamilton diamond wrist watch and bracelet in the sum of $4,500. This recited "Issued to Mrs. Clara Olson" and was attached to the above policy.

On July 12, 1948, certain of the articles listed on the above schedule and on the endorsement were stolen from an apartment in Los Angeles then occupied by Clara Olson's daughter, the plaintiff, Madalynne Paul, who on June 1, 1948, had subleased it from her fiancé, George Miller. The loss was promptly reported by respondent's agent to the defendant insurance company's agent. On September 1, 1948, the defendant addressed a letter to the plaintiff Olson at her San Francisco address, stating that it "elects to rescind the . . . contract of insurance from the date said contract was entered into . . . on account of various concealments and misrepresentation made in connection with the issuance of said policy. . . ." Enclosed with the letter as received by the plaintiff Olson was appellant's check in the full amount of the premium theretofore paid by her. On November 10, 1948, plaintiff Olson returned this check to appellant, together with a notice of rejection of its attempted rescission.

Plaintiff Olson, on February 4, 1949, filed this action against

the defendant insurance company in the form of two counts with herself as the sole named plaintiff. By the first count she sought declaratory relief by reason of the attempted rescission of the policy, and by the second count the value of the insured articles stolen in the sum of $22,975. Defendant having demurred, and its demurrer having been ordered off calendar, plaintiff Olson filed a first amended complaint. It consisted of only one count and sought the value of the stolen articles in the same amount of $22,975. Appellant demurred thereto and its demurrer was sustained, respondent Olson being given leave to amend and to join new plaintiffs. Plaintiffs Olson and Paul thereupon joined in filing a second amended complaint. This complaint is divided into two counts. The first one is on behalf of plaintiff Olson and the second on behalf of plaintiff Paul. The first count alleges the issuance of the policy and endorsement No. 1 by the defendant insurance company to plaintiff Olson, the fact that no written application was submitted or requested, the loss of most of the scheduled articles by theft, the ownership of five of them by plaintiff Olson, the failure of such defendant to pay their agreed and insured value, as obligated, to wit: $5,025, and the performance by plaintiff Olson of the contract. The second count adopts by reference all of the allegations of count I, except those referring to plaintiff Olson's five articles. It then alleges that plaintiff Paul is the natural daughter of plaintiff Olson and that they at all times mentioned have resided in the same domicile, that plaintiff Paul owned all of the articles stolen except the five claimed by plaintiff Olson, that their agreed and insured value was $17,945, appellant's failure to pay the same as obligated, and plaintiff Paul's performance of all conditions of the policy. The prayer seeks $5,025 and interest for plaintiff Olson, and $17,945 and interest for respondent Paul. After its demurrer to the last pleading was overruled the defendant insurance company filed its answer thereto. A demurrer to this answer was filed by plaintiffs which was sustained. Defendant insurance company then filed its first amended answer whereby it admitted the issuance of the policy and endorsement No. 1 to plaintiff Olson and denied most of the other allegations. It also set up two affirmative defenses. By the first it alleged the failure of both plaintiffs to file with it or its agents a detailed or any proof of loss as required by the policy. By the second affirmative defense it set forth a paragraph of the policy which de-

clared it would be void if the assured had concealed or misrepresented any material fact or circumstance or committed any fraud touching any matter relating to the insurance or the subject thereof. It then alleged that plaintiffs had been guilty of such concealment and misrepresentations. It also alleged that plaintiffs had used various names, that between 1937 and 1941 each of them had conducted houses of prostitution and had been arrested therefor, that plaintiff Paul had been arrested upon many occasions for prostitution, vagrancy and other offenses, and was known to police departments as an associate of persons suspected of being burglars and bookmakers. It further alleged that the plaintiffs, or one of them, prior to the issuance of the policy in question and in 1947 and 1948, had caused several similar floater policies to be issued by other insurance companies, insuring similar articles under the names of Mrs. C. M. Paul and/or Madalynne Paul, all of which had been cancelled by such companies shortly after their issuance. It further alleged that plaintiffs concealed from it all of the above facts, and the ownership by plaintiff Paul of the articles claimed by her for the purpose of deceiving it. It also alleged that plaintiffs represented that plaintiff Olson was the owner of all the articles scheduled. It then alleged that it had no knowledge of such facts, believed the representations, was so deceived and upon discovery gave the notice of rescission set forth in the complaint.

Plaintiffs thereafter were permitted to file their third amended complaint in which they realleged counts I and II of their second amended complaint and added a third and fourth count against defendants Armond J. Hirschfield and the insurance agency corporation bearing his name. In these added counts they alleged that they had employed the new defendants as their agents to obtain the insurance policy in question, that if any false representations or concealments had taken place such were by the new defendants without the knowledge of plaintiffs and that if the defendant insurance company was successful in defeating plaintiffs' recovery under the policy plaintiffs would then be entitled to recover the amount so lost from the new defendants.

The case went to trial upon the pleadings as above set forth before a court sitting with a jury. Thereafter a verdict was rendered in favor of plaintiff Olson for $5,025 and interest and in favor of plaintiff Paul for $18,150 and interest against defendant insurance company and in favor of the other defendants. From the resulting judgment against it the de-

fendant insurance company has appealed. The plaintiffs have filed a separate appeal from that portion of the judgment in favor of the other defendants but ask that it be considered only if they are unsuccessful in resisting the appeal taken by the defendant insurance company. In view of our determination of the latter appeal no further consideration need be given to the former.

█ Appellant relies in a considerable measure for a reversal of that portion of the judgment in favor of the respondent Paul on its contention that she was not an insured under the policy and that therefore count II fails to state a cause of action. Appellant argues that the clause "DOES INSURE MRS. CLARA OLSON Hereinafter called the Assured," designates the insured and that the sentence "On Jewelry and/or Furs, as per schedule attached, the property of the Assured and members of his or her family of the same domicile, whilst in all situations, against ALL RISKS, except as hereinafter excluded," designates what property was insured. It reasons therefrom that only respondent Olson was insured and only as to such property in which she had an insurable interest. With this construction of the policy we cannot agree. It not only violates the clear import of the language but also is contrary to the well established rules of construction of insurance policies. Appellant would have us hold that only the property owned by a member of respondent Olson's family that is insured is that in which respondent Olson has an insurable interest such as a community property interest in the property of a spouse or an interest in that of a minor child. Such a construction would give little if any effect to the "family" clause since members of a family own much of such property outright. Furs and jewels of a wife are frequently the result of gifts and therefore not community property. It would result in appellant's being absolved from liability on 80 per cent of the articles for which it accepted a premium. If we considered these terms of the policy were ambiguous we would be forced to come to the same conclusion because of the established rules of construction. █ A contract of insurance should be most strongly construed against the insurer if such construction is fairly reasonable (see *Pendell* v. *Westland Life Ins. Co.*, 95 Cal.App.2d 766 [214 P.2d 392]) ; it should be given such construction as will fairly carry out its object by securing indemnity to the insured for the losses to which the insurance relates (see *Fageol T. & C. Co.* v. *Pacific*

*Indem. Co.,* 18 Cal.2d 748 [117 P.2d 669]); if the insurer fails to use such language as to make the provisions of the contract clear any uncertainty or reasonable doubt is to be resolved against it (see *Pacific H. & V. Co.* v. *Williamsburg City Fire Ins. Co.,* 158 Cal. 367 [111 P. 4]); if there is doubt whether the words are used in an enlarged or restrictive sense, other things being equal, the construction will be adopted which is most beneficial to the insured (see *Berliner* v. *Travelers' Ins. Co.,* 121 Cal. 458 [53 P. 918, 66 Am.St.Rep. 49, 41 L.R.A. 467]).

Reference to property of the named insured's family is frequently made in policies similar to the one here involved. However, as is to be expected, appellant has not been able to cite us to any case that supports its construction of the language in question. On the other hand respondents Olson and Paul have cited several cases supporting our conclusion. In the case of *Central Manufacturers' Mut. Ins. Co.* v. *Friedman* (1948), 213 Ark. 9 [209 S.W.2d 102, 1 A.L.R.2d 557], the policy recited that it covered property owned by the named insured "and members of the Insured's family of the same household, while in all situations. . . ." The insured's minor son, having been drafted, lost certain of his property by theft from his quarters in an army post. The court held the insurance company liable for the value of the property lost. In doing so it assumed that the son alone owned the property. In the case of *Balzer* v. *Globe Indemnity Co.* (1924), 211 App. Div. 98 [206 N.Y.S. 777], the policy read (p. 778 [206 N.Y.S.]): ". . . this policy shall apply to all such property owned by the assured or by any permanent member of the household of the assured . . . or by a relative of the assured permanently residing with him." The insured's mother, with whom he resided, lost certain of her property by theft from the family home. The court held the insurance company liable therefor.

Appellant also contends that "the evidence is overwhelming" that respondent Paul was not "of the same domicile" as the respondent Olson. Both mother and daughter testified they had made their home in the hotel jointly owned by them and had been living together in the same room ever since long before the policy was issued. This hotel was located at the address described in the policy as 649 Jones Street, San Francisco. Respondent Paul testified that by coming to Los Angeles she had not intended to change that domicile or to make the apartment in Los Angeles her home unless the hotel

was sold and she married her fiancé George Miller. The hotel was not sold until long after the articles were stolen and respondent Paul never married Mr. Miller. Such evidence is substantial, adequately supports the implied finding of common domicile, and therefore must be accepted as true (see *Murphy* v. *Travelers Ins. Co.,* 92 Cal.App.2d 582, 587, 588 [207 P.2d 595] ).

▮ Appellant next urges that respondent Paul cannot prevail because she failed to file with appellant's agent "a detailed sworn proof of loss within ninety days from date of loss" as required by the policy. There was no evidence that either of these respondents complied with this requirement. Yet appellant makes no such contention as to respondent Olson. This is undoubtedly due to appellant's recognition that that point is not available to it because it renounced the policy and denied liability by its notice of rescission to respondent Olson before the expiration of the 90 days (see *Mercer Casualty Co.* v. *Lewis,* 41 Cal.App.2d 918, 922 [108 P.2d 65] ). Neither is the point available to it insofar as respondent Paul is concerned. It is clear that respondent Olson was the agent of respondent Paul from the earliest insurance negotiations with appellant. While the notice of rescission was directed to respondent Olson it declared that appellant ". . . elects to rescind [the policy] from the date said contract was entered into. . . ." This was a renouncement of the entire policy. ▮ Notice thereof to respondent Olson was notice to her principal, respondent Paul.

▮ The "concealments" upon which appellant relies are of two types. One, that both respondents Olson and Paul had had insurance policies cancelled by other insurance companies and under different names within a year prior to the issuance of this policy. Two, that such respondents had admittedly operated houses of prostitution and that respondent Paul had been arrested on several occasions on charges of prostitution. ▮ These matters were pleaded as affirmative defenses and the burden of proof therefore was upon appellant, both as to the concealments and as to the materiality thereof. ▮ Such concealments, like false representations, do not affect the validity of an insurance policy unless material (see Ins. Code, § 332, and *Employers' Liability Assur. Corp.* v. *Industrial Acc. Com.,* 177 Cal. 771 [171 P. 935] ).

▮ The jury did not consider them material and we cannot say that as a matter of law they were material. Counsel for appellant has cited us no case so holding. Respondents' coun-

sel on the other hand has cited three cases in which California courts have held that even though the insured falsely represented that there had been no prior cancellation of insurance on the property insured such a representation was not material to the nature of the risk there involved. (See *Employers' Liability Assur. Corp.* v. *Industrial Acc. Com.*, supra; *Hawley* v. *Liverpool L. & G. Ins. Co.*, 102 Cal. 651 [36 P. 926] ; *Kleiber M. T. Co.* v. *International Indem. Co.*, 106 Cal.App. 709 [289 P. 865].) There was no direct evidence as to why the prior policies had been cancelled. On the other hand there was evidence that insurance companies were reluctant to carry burglary risks if the assureds, as did the respondents Olson and Paul, lived in hotels. We cannot hold as a matter of law that such cancellations were because of respondents' prior immoral activities and arrests, the last of which had occurred five years before, or that appellant would have refused to issue the policy if it had known of them. A number of cases have been cited in which the concealments relied upon were somewhat similar to ones here charged. In each case the defendant insurance company was held liable. In *Blair* v. *National Security Ins. Co.*, 126 F.2d 955, the insured had failed to disclose prior losses under similar policies issued to her under different names. In *Roberto* v. *Hartford Fire Ins. Co.*, 177 F.2d 811, the insured, an alien, had been convicted of perjury and ordered deported. In *Stecker* v. *American Home Fire Assur. Co.* (1949), 299 N.Y. 1 [84 N.E.2d 797], the insured had been convicted of the crime of concealing assets. The cases last cited above declare that it must be shown that the concealment is tainted with a fraudulent intent. The appellant so charges in our case. However the jury was of a contrary opinion. We cannot say as a matter of law that either respondent Olson or Paul or their agent concealed the facts in question or did so with the intent to defraud appellant. In the case of *Roberto* v. *Hartford Fire Ins. Co.*, supra, at page 814, the court said: "We think the correct rule is that where, as here, the insurer fails to question the insured, the latter cannot be said to have concealed facts so as to void the policy unless they are facts which he knows, or which a reasonable man should have known, to be material to the risk and unless he does so for the purpose of obtaining insurance which could not have been obtained after a disclosure of such facts."

Appellant by its own conduct evidenced its lack of interest, and therefore the materiality to it, as to who were the members of respondent Olson's family there domiciled with her, what

was the moral and criminal history of respondent Olson and such family members, under what names insurance policies had been issued to them and why such policies had been cancelled. Before it would assume the offered risk appellant caused an investigation to be made by a recognized insurance investigating agency. Through it appellant could easily have discovered the facts in question. Yet the written report given appellant by this agency, which was received in evidence, discloses that while some questions were asked about members of the named insured's family, none were asked about the subject matter which appellant claims as misrepresentations and concealments.

Appellant complains of the court's failure to give some of its proposed instructions to the jury and also that some of the instructions given were legally erroneous. We find little cause for such complaints. Most of the instructions so refused were based on appellant's erroneous interpretation of the clause "members of his or her family." Many of appellant's complaints of instructions given are based on its misconceptions of the law referred to earlier in this opinion.

Appellant's attack upon plaintiffs' instruction No. 7 is not well founded. It instructed the jury that the ownership of the property was in defendants Olson and Paul. The evidence of such ownership was without conflict. The only issue in that regard was as to the effect of such ownership.

Appellant attacks plaintiffs' instruction No. 11 on the grounds that it is argumentative in form and is an erroneous statement of the law on the degree of proof required in fraud cases. This instruction reads as follows: "You are instructed that where a question of fraud is involved, if there be two inferences equally reasonable and equally susceptible of being drawn from the proved facts, the one favoring fair dealing and the other favoring corrupt practice, it is the express duty of the jury to draw the inference favorable to fair dealing. *Fraud must be proved, though not necessarily by direct evidence, but when the defendant Standard Marine Insurance Co., Ltd's case goes no further than to establish a state of facts from which the inference of fraud may or may not be reasonably drawn, it has failed to establish its case by a preponderance of the evidence, and it becomes your duty to find in favor of innocence and uprightness.* [Italics ours.]

"Now, where the defendant Standard Marine Insurance Co., Ltd., has come into court and set forth in its answer certain reasons why the policy has become void, and certain

reasons why no recovery can be had thereof, then you are instructed as to those defenses the burden of proof is on the defendant Standard Marine Insurance Co., Ltd., to show to your satisfaction by a preponderance of the evidence in the case that the matters set forth by it in order to void the policy are true. You are not authorized to presume fraud. It must be, as the court has instructed you, proven, and the burden of proof is upon the defendant Standard Marine Insurance Co., Ltd., and it must prove fraud by a preponderance of the evidence and must not be presumed." While the instruction is somewhat argumentative in form it is not phrased so as to infringe upon the jury's province in determining the question of fact involved. It is true that the portion of the instruction which we have italicized above is an incorrect statement of the law in that it omits the necessary condition that the inferences of fraud be equally balanced. However that omission is supplied by the opening sentence of that paragraph and the jury should not have been misled in that regard by the instruction when read as a whole. An identical instruction, except for the argumentative form, was approved in the case of *Singleton* v. *Hartford Fire Ins. Co.* in 127 Cal.App. 635 at pages 647 and 648 [16 P.2d 293]. It is also true that the italicized portion of the instruction is so phrased as to indicate that the defendant insurance company had failed to establish fraud. But in view of the insubstantial character of the claim of fraud we do not believe that the error was such as to affect the jury's determination of that issue.

Appellant also complains because plaintiffs' instruction No. 4 refers only to the respondents Olson and Paul having had the same domicile when the policy was issued and fails to declare that respondent Paul was required to have the same domicile as respondent Olson at the time of the loss. However that point was well covered by the giving of defendant insurance company's instruction No. 15, which declares that if the jury found the respondent Paul prior to loss had changed her domicile by moving to Los Angeles she could not recover. We must assume that the jury considered these two instructions together. By doing so it could not be misled on this point.

After the jury had been considering the case for some time it returned and indicated its desire to have some instructions reread on domicile, fraud and investigation. The court read some but not all of such instructions following which the jury answered affirmatively the following questions by the court: "Now does that cover your question of domicile?"

"Does that answer your questions?" Appellant made no request that other instructions be read. A similar situation arose in the case of *People* v. *Finali* found in 31 Cal.App. 479. At page 489 [160 P. 850] the court said: "Defendant was not entitled as matter of right to have instructions read which the jury had not called for or to have all the instructions on a given subject read when such as were read were satisfactory to the jury."

Read as a whole we find the instructions are adequate and correctly state the law. The jury should not have been misled in any of the particulars claimed by appellant.

The judgments are affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied March 3, 1952, and defendant and appellant's petition for a hearing by the Supreme Court was denied April 3, 1952. Edmonds, J., was of the opinion that the petition should be granted.