Blanche CARR et al.

v.

Oveta Culp HOBBY, Secretary, Department of Health, Education and Welfare.

Civ. No. 53-688.

United States District Court, D. Massachusetts.

Oct. 28, 1954.

As Amended Dec. 9, 1954.

Samuel Abrams, Philip D. Epstein, Boston, Mass., for plaintiff.

Harold G. Jackson, U. S. Atty., W. Langdon Powers, Asst. U. S. Atty., Boston, Mass., and David E. Place, Boston, Mass., Asst. U. S. Atty., for defendant.

SWEENEY, Chief Judge.

The plaintiff brings this action to review a decision of a referee as provided in Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g).

Findings of Fact.

The wage earner was divorced by his first wife and a decree nisi was issued on January 30, 1936, and the divorce became final on July 30, 1936. Under the Massachusetts laws, G.L. Chapter 208, section 24, the libelee was forbidden to remarry within two years from the latter date. Nevertheless, in January of 1937 the wage earner married the present claimant in New Hampshire. They immediately returned to the Commonwealth of Massachusetts and continued to live together for some time. A son Paul was born on June 23, 1937. The wage earner in February of 1937 left the claimant and she continued to live in the home of her parents, and he returned to his mother. He infrequently visited his wife and son, and in 1938 and 1939 the claimant obtained orders from the District Court of East Boston requiring the husband to contribute a weekly sum

for the support of the child. While the wage earner was in the service from 1942 to 1945, the wife received certain allotment payments.

G.L.Mass. Chapter 207, section 10, provides as follows:

"If any person residing and intending to continue to reside in this commonwealth is disabled or prohibited from contracting marriage under the laws of this commonwealth and goes into another jurisdiction and there contracts a marriage prohibited and declared void by the laws of this commonwealth, such marriage shall be null and void for all purposes in this commonwealth with the same effect as though such prohibited marriage had been entered into in this commonwealth."

By virtue of that statute the marriage in New Hampshire would be construed by the Massachusetts courts to be null and void, but section 6 of that same chapter provides as follows:

"If a person, during the lifetime of a husband or wife with whom the marriage is in force, enters into a subsequent marriage contract with due legal ceremony and the parties thereto live together thereafter as husband and wife, and such subsequent marriage contract was entered into by one of the parties in good faith, in the full belief that the former husband or wife was dead, that the former marriage had been annulled by a divorce, or without knowledge of such former marriage, *they shall, after the impediment to their marriage has been removed by the death or divorce of the other party to the former marriage, if they continue to live together as husband and wife in good faith on the part of one of them, be held to have been legally married from and after the removal of such impediment,* and the issue of such subsequent marriage shall be considered as the legitimate issue of both parents." (Italics supplied.)

The real question in this case is whether or not under section 6 the marriage was validated and the son Paul became legitimized. It was the plain intent of section 6 to validate marriage and legitimize children of that marriage where the parties themselves were living together "in good faith on the part of one of them". The referee has equated living together with cohabitation and cites Turner v. Turner, 189 Mass. 373, 75 N.E. 612. I think his interpretation of living together is too narrow. I would consider the main purpose of section 6 was to legitimize children born out of an unlawful marriage after the unlawful impediment had been removed provided the parties had not terminated the invalid marriage to the extent that both parties considered it dissolved. See Richards v. Social Security Administration, D.C., 76 F.Supp. 12. The referee bases his opinion upon the narrow ground that the marriage was not validated by section 6 but makes no finding whether or not the claimant was living with the wage earner at the time of his death within the meaning of the act. I think that there was sufficient evidence before the referee to call for a finding that the marriage was validated by the removal of the two-year impediment and that the claimant Blanche Carr was living with her deceased husband at the time that the impediment was removed and that both she and her son Paul are entitled to the monthly benefits applied for. The referee concedes that under Massachusetts law a husband and wife might be found to be living together within the meaning of section 6, even though at the time that the impediment was removed they were separated because of illness, difficulty in finding living quarters or financial difficulties. I think that the courts might extend coverage under this section to a couple who were separated but visited with each other and maintained friendly relations at least to the extent that they did not terminate the marriage that they had entered into unlawfully but which became legal with

the running of the two-year prohibitory period.

### Conclusions of Law.

From the foregoing I conclude and rule that the marriage between Blanche Carr and Gilman Carr became valid on July 30, 1938.

I conclude and rule that any question of legitimacy of Paul A. Carr was resolved in his favor on July 30, 1938.

I conclude and rule that the plaintiff Blanche Carr in her own right and as next friend of Paul A. Carr is entitled to receive the monthly benefits provided by the act.