[Civ. No. 17223. First Dist., Div. One. June 19, 1957.]

CAL-FARM INSURANCE COMPANY (a Corporation), Appellant, v. CAROLYN BOISSERANC et al., Defendants; JAMES BOISSERANC, a Minor, Respondent.

Campbell, Custer, Warburton & Britton, Alfred B. Britton, Jr., and W. R. Dunn for Appellant.

Rankin, Oneal, Luckhardt, Center & Hall and Edward J. Niland for Respondent.

PETERS, P. J.—James Boisseranc, the child of Carolyn and August Boisseranc, aged 6, injured another child. Civil actions were filed against the Boisserancs and James. The insurance carrier brought this action for declaratory relief, seeking a determination that the insurance company was not liable under a policy issued by it to August Boisseranc. This policy was a comprehensive liability policy which protected August and his wife and relatives "if residents of his household" against liability imposed by law because of bodily injuries sustained by others. The trial court found that the insurance carrier was not obligated to defend or to respond in damages in any action against Carolyn, but decreed that James was an insured within the meaning of the policy. Cal-Farm appeals from this portion of the judgment.

The insurance policy contains the following pertinent coverage provisions:

"Coverage A—Bodily Injury Liability.

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law . . . for damages, because of bodily injury . . . sustained by any person or persons."

It is also provided that: "The unqualified word 'insured' includes the named insured and also includes, if residents of his household, his spouse and relatives. . . ."

Under the terms of the policy the insurer is admittedly obligated to defend any suit asserting a liability against any of the insured covered by the policy. The question presented is whether James, the son of August Boisseranc, is an insured within the meaning of the policy. This depends upon whether James, as a matter of fact, qualified as a "resident" of the "household" of August on the date of the accident.

When the policy was executed in 1949 the Boisseranc family was intact, that is, August and Carolyn and their children, including James, lived as a family unit on the insured premises. In 1952 August and Carolyn separated, and two of the children, including James, went to live with their mother. In February of 1953 Carolyn secured an interlocutory decree of divorce. Following the separation, James spent part of his time with each parent, the major portion being spent with his father. On September 1, 1953, shortly after leaving his father's home and while staying with his mother, James injured the child who has brought the actions from which the insurance carrier seeks to be relieved.

The main argument of the insurance carrier is that under the terms of the interlocutory decree of divorce between August and Carolyn, their son, James, as a matter of law, resided with Carolyn and not with August. The interlocutory, in reference to the custody of James, provided as follows:

"That said parties are awarded the joint custody of James Boisseranc, the minor son of these parties, provided that the physical residence of the said James Boisseranc shall be divided between the parties so that said son shall reside alternate periods of fifteen (15) consecutive days with each of the parties, the first of said fifteen (15) day periods to begin with the 6th day of February, 1953, and plaintiff to have the first opportunity to select the beginning period in which said child will reside with her.

"That each of said parties shall have freedom of visitation

with the child or children in the custody of the other at reasonable times and places.''

Several months after this decree was entered, and before September 1, 1953, the terms of the interlocutory were modified by stipulation to read as follows:

''That said parties be awarded the joint custody of Diane Boisseranc, their minor daughter, as well as the joint custody of James Boisseranc as provided for in said agreement and decree;

''That the physical residence of Diane Boisseranc shall continue to be with plaintiff and that the physical residence of James Boisseranc shall be with plaintiff, rather than divided, as provided in said decree; provided, however, that defendant shall have the right of visitation with said two minor children at all reasonable times and places, including the visitations by them in his home.''

 The evidence most favorable to respondent shows that after the interlocutory was entered James spent substantially three-fourths of his time, day and night. with his father. After the decree was modified and up to June, 1953, James was with his father more than half the time. The school year ended in June. After the termination of the school year, James spent a few days with his mother and then returned to his father's home, where he remained until about a week before the accident when he returned to his mother's house. He was physically staying at his mother's home when the accident occurred. The evidence shows that between the date of the modification of the interlocutory and the date of the accident James was with his father three-fourths of the time. After the accident and up to December of 1953 James spent substantially more time with his father than he did with his mother. James had a bed in his father's house and kept a substantial amount of his clothing and many of his playthings there. At all times August Boisseranc paid for his son's support, clothing and medical bills.

August testified that it was his belief that he and his wife were equally entitled to the custody of James. Carolyn testified that she did not interpret the modified interlocutory as meaning that James' ''residence'' was to be exclusively with her. She also testified that even after the interlocutory and following the accident she had not definitely decided never to return to August. Later, however, she did secure a final decree and marry another person.

On this evidence the trial court, after finding that Carolyn

was not covered by the policy, found that "on September 1, 1953, defendant James Boisseranc, a minor, was the son and a resident of the household of August Boisseranc within the meaning and terms of the policy of insurance, the subject of this action, and that on said date a relationship of insurer and insured did exist between the plaintiff herein and the said James Boisseranc."

Appellant, as already stated, places its main reliance on the custody terms of the interlocutory decree and its modification in support of its contention that, as a matter of law, James was not a "resident" of August's "household" at the time of the accident. It cites cases dealing with the technical definitions of "residence" and "domicile," particularly in the fields of family law and conflict of laws.

There can be no doubt that in some situations, particularly in the field of jurisdiction, courts have held that the terms of a divorce decree are decisive as to the residence of a minor child.* There are also a line of cases holding that the parent to whom custody has been given by a decree has the power to change the legal residence of the child. (Civ. Code, § 213; Welf. & Inst. Code, § 1526; *Sampsell* v. *Superior Court*, 32 Cal.2d 763 [197 P.2d 739]; *In re Gi*, 134 Cal.App.2d 479 [286 P.2d 364]; *Guardianship of Brazeal*, 117 Cal.App.2d 59 [254 P.2d 886]; *Heinz* v. *Heinz*, 68 Cal.App.2d 713 [157 P.2d 660]; *In re Chandler*, 36 Cal.App.2d 583 [97 P.2d 1048]; *Guardianship of Casella*, 133 Cal.App. 80 [23 P.2d 782]; Annotation 53 A.L.R. 1160.)

Appellant also emphasizes that James was living with his mother when the accident occurred, and contends that this negatives any thought that James was then a "resident" of his father's "household."

The contention that residence, so far as coverage under the policy is concerned, is a question of law is not sound. Obviously, extrinsic evidence had to be admitted before the court could interpret the policy. This is one test as to whether the question is one of "fact" or "of law." (*Quader-Kino A. G.* v. *Nebenzal*, 35 Cal.2d 287 [217 P.2d 650]; *Edwards* v. *Billow*, 31 Cal.2d 350 [188 P.2d 748]; *Transportation Guar. Co.* v.

---

*(See, for example, *Toledo Traction Co.* v. *Cameron*, 137 F. 48 [69 C.C.A. 28], holding that the terms of the custody decree established the residence of a child to determine federal diversity jurisdiction; *Board of Com'rs of Summit County* v. *Board of Com'rs of Trumbull County*, 116 Ohio St. 663 [158 N.E. 172], holding such a decree established residence in determining whether the child was eligible for county relief.)

*Jellins,* 29 Cal.2d 242 [174 P.2d 625]; *Estate of Rule,* 25 Cal.2d 1 [152 P.2d 1003, 155 A.L.R. 1319].) At the trial both sides introduced extrinsic evidence on the subject. Thus, appellant introduced the terms of the interlocutory and its modification. Both sides, without objection, presented evidence as to the periods James spent with each parent.

■ The parties were undoubtedly correct in assuming that extrinsic evidence was admissible on the question of interpretation. Obviously "relatives" of the named insured "if residents of his household" require some explanation *dehors* the contract. (*Chastain* v. *Belmont,* 43 Cal.2d 45 [271 P.2d 498]; *Herrmann* v. *Fireman's Fund Ins. Co.,* 127 Cal.App.2d 560 [274 P.2d 501]; *Pendell* v. *Westland Life Ins. Co.,* 95 Cal.App.2d 766 [214 P.2d 392].)

■ Since the question is one of fact then, of course, any reasonable construction by the lower court must be upheld under the general rules applicable to conflicting evidence.

■ Another rule of construction is also applicable, that is, that in determining whether the trial court's construction is reasonable any ambiguities in the policy must be interpreted against the insurer. This rule of construction extends to a determination of the question as to who is covered by a policy. In *Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 437 [296 P.2d 801], it was stated: "It is elementary in insurance law that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. [Citations.] If semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates. [Citation.] If the insurer uses language which is uncertain any reasonable doubt will be resolved against it; *if the doubt relates to extent or fact of coverage, whether as to peril insured against* [Citations], *the amount of liability* [Citations] *or the person or persons protected* [Citations], the language will be understood in its most inclusive sense, for the benefit of the insured." (Emphasis added.) (See also *Arenson* v. *National Auto. & Cas. Ins. Co.,* 48 Cal.2d 528 [310 P.2d 961]; *Ensign* v. *Pacific Mut. Life Ins. Co.,* 47 Cal.2d 884 [306 P.2d 448]; *Pendell* v. *Westland Life Ins. Co.,* 95 Cal.App.2d 766 [214 P.2d 392].)

Appellant claims that the rule of construction against the insurer applies only after those insured have been determined and does not apply in determining whether a particular person is or is not in the insured class, citing some out-of-state

authorities commented on in 44 Corpus Juris Secundum, page 1226, section 308. Whatever the law may be in other states, the rule in California is to the contrary as is made clear in the italicized portion of the above quotation.

Thus, we start the problem of interpretation with the rule that the policy must be construed so as to give James the benefit of any reasonable interpretation that may bring him within its coverage. ▮ The precise question is whether, under any reasonable interpretation of the policy, was James, at the time of the accident, a "resident" of the "household" of August?

These quoted terms have no absolute meaning. Their meaning may vary according to the circumstances. (*Island* v. *Fireman's Fund Indem. Co.*, 30 Cal.2d 541 [184 P.2d 153, 173 A.L.R. 896] ; *Moore S. Corp.* v. *Industrial Acc. Com.*, 185 Cal. 200 [196 P. 257, 13 A.L.R. 676].) An important factor is to ascertain the purpose of the terms of inclusion and exclusion. (*Arenson* v. *National Auto. & Cas. Ins. Co.*, 45 Cal.2d 81 [286 P.2d 816] ; *Smith* v. *Smith*, 45 Cal.2d 235 [288 P.2d 497].) It is certainly obvious that the terms of the custody decree are not controlling as a matter of law. Certainly, even if such decree had given full custody and control of James to Carolyn, without even a right of visitation in August, and had James spent all of his time on his father's farm, James would be an "insured" within the meaning of the policy. One purpose of the extension of coverage clause is to broaden the coverage of the named insured. *August,* when he took out the policy, was potentially liable for the torts of his minor children under proper circumstances. Thus, the extension of coverage to "relatives" protects August, the named insured, as well as protecting the relatives. Another purpose of the extended coverage provision was to assist the insured, August, in complying with his moral and legal obligation to maintain and support his family. It is of some significance that the policy does not contain any itemization of the persons covered, specifying only the named insured, August and his partner, and the insured premises. The premium payments were not based upon the number of relatives living on the premises.

The parties refer to many cases which discuss the terms here involved. These cases are collected and discussed in 50 A.L.R. 2d 120 ; 1 A.L.R.2d 561 ; 19 Words and Phrases 698 ; 27 Words and Phrases 23 ; 37 Words and Phrases 453. While the cases do not all appear consistent, it can generally be stated that,

insofar as the cases involve insurance policies, they can be roughly divided into cases involving policies excluding from coverage of the policies members of the insured's household, and those extending coverage to such persons. Both attempt to apply the rules of construction above discussed. As a result, in the extension cases the questioned terms are broadly interpreted, while in the exclusion cases the same terms are given a much more restricted interpretation. This is necessary because in both situations the courts favor an interpretation in favor of coverage. This was illustrated by the case of *Island v. Fireman's Fund Indem. Co.*, 30 Cal.2d 541 [184 P.2d 153, 173 A.L.R. 896]. The court in that case was interpreting an automobile policy *excluding* from coverage any car operated by the named insured and furnished to him by a "member of his household." It was held that a son of the named insured, who admittedly was a "member of his household" prior to entry into the military service, was not such a member at the time of the accident. In this way the policy was interpreted most strongly against the insurance company so as to impose liability upon it. Inconsistent, insofar as the definition of the terms are concerned, but reconcilable in result, is *Central Manufacturers' Mut. Ins. Co.* v. *Friedman*, 213 Ark. 9 [209 S.W.2d 102, 104], where a minor son serving in the armed forces was held to be a "member of the insured's family of the same household" within the meaning of a personal property policy *extending* coverage to such persons. The common denominator in the two cases is that in both, the court upheld the rule that the language should be interpreted most strongly against the insurance company so as to hold that the policy covered the persons involved.

There are several California cases interpreting similar language. Thus, in *Harlan* v. *Industrial Acc. Com.*, 194 Cal. 352 [228 P. 654], it was held that a sister of the mother of an illegitimate child was a dependent and "good faith member of the family or household" of the child within the meaning of a provision of the Workmen's Compensation Act extending coverage to such persons, where the child had been reared in the home of the sister but was killed while in the employ of and residing with a third person. Under the same provision of the act, in *Moore S. Corp.* v. *Industrial Acc. Com.*, 185 Cal. 200 [196 P. 257, 13 A.L.R. 676], a minor was held entitled to death benefits where she lived with her mother and the decedent and was supported by decedent, although the relationship between her mother and decedent was knowingly meretricious.

In *Leroux* v. *Industrial Acc. Com.*, 140 Cal.App. 569 [35 P.2d 624], the court was dealing with a compensation policy excluding from coverage relatives of the insured "when . . . living on the premises occupied by the [insured] and/or in the household of the [insured]." It was held that a brother of the insured was covered while living temporarily in the insured's house during a seasonable employment with the insured. (See also *Clark* v. *Industrial* Acc. Com., 129 Cal.App. 536 [19 P.2d 44].)

An interesting case is *Olson* v. *Standard Marine Ins. Co.*, 109 Cal.App.2d 130 [240 P.2d 379]. The policy involved protected certain itemized personal property of the named insured, a San Francisco resident, and the property of "members of his or her family of the same domicile." Certain of the itemized property, including some articles owned by the named insured's daughter, were stolen from the Los Angeles apartment of the daughter. It was held that the daughter was covered. The trial court had found that the daughter was domiciled in San Francisco, although living in Los Angeles. The finding was held supported by testimony of the daughter that she did not have the intention to make Los Angeles her home. (But see *Kohner* v. *National Surety Co.*, 105 Cal.App. 430 [287 P. 510].)

There are many cases holding that in interpreting such clauses the physical place the claimed insured was living is not necessarily controlling. (See, for example, *Olson* v. *Standard Marine Ins. Co.*, 109 Cal.App.2d 130 [240 P.2d 379]; *Hoff* v. *Hoff*, 132 Pa.Super. 431 [1 A.2d 506]; *Umbarger* v. *State Farm Mut. Auto. Ins. Co.*, 218 Iowa 203 [254 N.W. 87].) In *Barker* v. *Iowa Mutual Ins. Co.*, 241 N.C. 397 [85 S.E.2d 305], fire coverage was extended to an apartment maintained by the named insured's wife and son while these two were away from the family home during the time the son was attending college. (See also *Mississippi Ben. Ass'n* v. *Majure*, 201 Miss. 183 [29 So.2d 110]; *Wright* v. *Bank of Southwestern Georgia*, 13 Ga.App. 347 [79 S.E. 184].)

These cases illustrate that the interpretation of the terms involved is not fixed but varies according to the circumstances of the case. They also demonstrate that most courts will interpret the terms so as to extend the coverage if this can be done under any reasonable interpretation of the facts.

In the instant case, we start with the premise that the terms of the interlocutory, while a factor, are not conclusive. We know that after the decree the child spent three-fourths

of his time with his father under circumstances where the child was certainly a "resident" of his father's "household," at least while actually living with his father. The accident happened a few days after the child had left the father's home to live a short while with his mother. Under the cases discussed above we know that actual residence at the time of the accident is not conclusive and that coverage may exist while temporarily away from the named insured's premises. Certainly, under the facts, the child had a continuing relationship with his father, so far as residence is concerned. In view of the purpose of such policies already discussed, and the rules of construction applicable to such policies, it must be held that the finding of the trial court on the issue is supported.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied July 19, 1957, and appellant's petition for a hearing by the Supreme Court was denied August 13, 1957. McComb, J., was of the opinion that the petition should be granted.