**Mary P. WIDENER, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education & Welfare, Defendant.**

No. 64–C–29–A.

United States District Court
W. D. Virginia,
Abingdon Division.

May 26, 1965.

Ralph E. Boucher, Boucher & Boucher, Abingdon, Va., for plaintiff.

H. Garnett Scott, Asst. U. S. Atty., Roanoke, Va., for defendant.

MICHIE, District Judge.

This is an action under section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. The final decision of the Secretary in this case is a decision rendered by a hearing examiner on November 21, 1963, which became the final decision of the Secretary on February 24, 1964, when the Appeals Council denied the plaintiff's request for review. This final decision holds that the plaintiff is not entitled to mother's insurance benefits for which she filed application on January 8, 1963.

On review in this court, both parties have moved for summary judgment.

The wage earner, Fess Widener, obtained a divorce from his first wife on December 18, 1936. Under the applicable law of the State of Virginia in effect at the time this divorce was obtained, Code of Virginia § 5113 (1919), as amended, Acts of Assembly, 1934, p. 445, a four-month waiting period was required before any party to a divorce could remarry. Nevertheless, on February 3, 1937, prior to the expiration of this four-month waiting period, the wage earner married Mary Puckett, the plaintiff. On November 30, 1953, the wage earner died, domiciled in Virginia, and the plaintiff thereafter filed her application for mother's insurance benefits with the Secretary.

It is clear that the wage earner's second marriage was void under the Virginia law in effect at the time the ceremony was performed because of his violation of the four-month waiting period rule. See Heflinger v. Heflinger, 136 Va. 289, 118 S.E. 316, 32 A.L.R. 1088 (1923). If the "marriage" between the plaintiff and the wage earner is void, then plaintiff has no claim for mother's insurance benefits under the Social Security Act. Section 202(g) of the Act, 42 U.S.C.A. § 402(g), provides that to be entitled to mother's insurance benefits the plaintiff must be a "widow" of an individual who died fully insured. Section 216(h) of the Act, 42 U.S.C.A. § 416(h), provides that in determining family status the "widow" must have been validly married to the wage earner under the laws of the state in which he was domiciled when he died, or she must have the status of a widow for the purpose of inheriting intestate personal property under the law applied by the courts of that state.

§ 5113 of the Code of Virginia was, however, again amended in 1960 and once again in 1962. The present provision, Va.Code Ann. § 20–118 (Supp.1964), provides, in part:

"Marriages heretofore celebrated in violation of any prohibited (sic) against remarriage shall not hereafter be deemed to be invalid because of the violation of such prohibition, provided that the parties to such a marriage have continued to reside together as husband and wife until the first day of July, nineteen hundred sixty, or until such time as one of the parties dies prior to July one, nineteen hundred sixty."

The plaintiff contends that this amendment validates her marriage and therefore makes her eligible for mother's insurance benefits. The Secretary denied the plaintiff's application on the ground that the plaintiff and the wage earner did not "reside together as husband and wife" within the meaning of the Virginia statute at the time of the wage earner's death in 1953. The decision of this case turns upon the construction to be placed upon the phrase "reside together as husband and wife."

The evidence upon which the Secretary relied in denying the plaintiff's application is a statement made by the plaintiff at the time she filed an earlier application for survivor's insurance benefits on behalf of her children only. This statement was made on April 19, 1954, shortly after the wage earner's death.

"I do not wish to file claim for myself as I plan to work again. I have been supporting the family since May 1952 until I had an operation in Nov. 1953. My husband and I separated in the summer of 1952 and he was living in Mendota, Va. He had a heart attack and was taken to a Dr.'s office in Abingdon, Va., where he died. He was not contributing to my support and we had no intention of living together again. He was not under court order to support me. He gave the children a small bit of clothing when he first left home but during the last year he was sick and unable to do anything for them."

The Secretary further relied upon information given by the wage earner in his application for old-age insurance benefits, filed on September 2, 1953, approximately three months before his death.

At that time the wage earner informed a representative of the Social Security Administration that he had been separated from his wife, the plaintiff, for about a year, that during that time he had made no contributions to her and that he was under no court order to make any contribution.

The plaintiff now seeks to temper the effect of the evidence upon which the Secretary relied. In her application for mother's insurance benefits she took the position that the wage earner had left home in September, 1953, to work on a farm ten miles away, that he was not a well man and the children got on his nerves, and that he would often "have a temper tantrum and go off and leave home for two or three months." The plaintiff stated, however, that the wage earner always bought the groceries every week and would come home whenever he wanted to see the children, which would be at least once a week. The wage earner, in the plaintiff's opinion, would have come home when he got over being mad had he not died on November 30, 1953.

The plaintiff testified at the hearing on her claim that she and the wage earner had not considered or mentioned any divorce, although they were not in the same house right at the time of his death. She and the wage earner lived together as man and wife until several months before his death. The wage earner would leave home because he was old, contrary, and would pout, but he had always come home when he got over his pouting spell. She stated that the wage earner would bring things for the children who were going to school and that he would sometimes give her money. These expenditures by the wage earner were estimated to amount to no less than $20 a week. Finally, while admitting her earlier statements that the wage earner was not contributing to her support and that they had no intention of living together again, she asserted that she would have allowed her husband to stay had he returned home.

Plaintiff further relied upon the testimony of her children to corroborate her statements and upon the application of the wage earner for old age benefits in September, 1953, in which he acknowledged his marital status and that he had four children by this marriage, and in which he gave Abingdon, where the plaintiff resided, as his home address rather than Mendota, where he had been staying.

At the hearing on the motions for summary judgment the plaintiff emphasized that the wage earner had left home primarily because he was ill and unable to make a living and that the couple had been forced to vacate the apartment in which they had resided for financial reasons. In sum, the plaintiff's position now seems to be that she and the wage earner were living apart for financial reasons.

If the decision of this case turned upon an acceptance of the evidence upon which the Secretary relied, I would be bound to accept his determination of this matter, for the findings of the Secretary, as to any fact, if supported by substantial evidence, are made conclusive by section 205(g) of the Act, 42 U.S.C.A. § 405(g). However, under the view which I take of the amendment to § 20–118 of the Code of Virginia, the plaintiff's claim must be allowed even though the Secretary's findings of fact be accepted.

The amendment to § 20–118 is legislation of a highly remedial character. Its clear purpose is to provide for the validation of theretofore void marriages and for the legitimization of children born of such marriages. A holding in this case which would deny the plaintiff's claim on the basis of a narrow interpretation of the phrase "residing together as husband and wife" would thwart the remedial purpose of the Virginia statutory amendment. Surely it would not be contended that a couple do not come within the terms of the amendment if they were physically separated for reasons of health or economic necessity. While the facts in this case indicate that the separation of the plaintiff and the wage earner was brought about by personal choice as well as by necessity, and while it is not to be doubted that the

family relations were strained, the fact remains that the parties continued to consider themselves bound by their marital contract. The plaintiff and the wage earner had physically resided together and raised a family for more than fifteen years prior to their separation in the summer of 1952. While the plaintiff had stated earlier that they had no intention of living together again, her testimony also indicates that the wage earner had left home before, but that he had returned, and that she would have allowed him to stay had he returned again on this occasion.

While apparently no other case has construed the amendment to the Virginia statute, there is authority in other jurisdictions for a construction which would allow the plaintiff's claim here. In Carr v. Hobby, 125 F.Supp. 545 (D.Mass. 1954), the court concluded that a marriage void initially because one of the parties had failed to abide by the two year waiting period after he had been divorced from his first wife, as required by Massachusetts law, was validated by the terms of a Massachusetts statute similar to the Virginia statute in issue. This was so even though the husband and his second wife had thereafter separated. The Massachusetts statute, G.L. Mass. Chapter 207, section 6, provided that if a marriage is deemed void because one of the parties was under a legal impediment at the time of the ceremony, "they shall, after the impediment to their marriage has been removed by the death or divorce of the other party to the former marriage, if they continue to live together as husband and wife in good faith on the part of one of them, be held to have been legally married from and after the removal of such impediment * * *." And in Wright v. Bank of Southwestern Georgia, 13 Ga.App. 347, 350, 79 S.E. 184, 186 (Ct.App.1913), the court construed the phrase "living together" to imply merely that there has been no separation, voluntary or legal, which can legally be said to have released either of the marital parties from their duty to the other under the strict letter of the law; the phrase does not always import that the parties are living at the same place. I find no reason for distinguishing the phrase "living together" in these cases from the phrase "reside together" in the Virginia statute.

 Under these circumstances, I conclude that the marriage of the plaintiff and the wage earner, void in 1937, was validated under the Virginia law by the amendment to § 20–118 of the Code of Virginia, and that the plaintiff's claim for mother's insurance benefits under section 202(g) of the Social Security Act, 42 U.S.C.A. § 402(g), must be allowed.

Plaintiff's motion for summary judgment is therefore granted. The defendant's motion is denied. An order will be entered accordingly.